RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Newnan

APR 2 8 2014

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| SHERYL P. FREEMAN | ) |
| | ) |
|    Plaintiff, | ) |
| | )    CIVIL ACTION FILE |
| vs. | ) |
| | )    CASE NO_____ |
| CITIBANK, NA; | ) |
| | ) |
| CITICORP CREDIT SERVICES, INC.; | ) |
| | ) |
| BALLARD SPAHR LLP; | ) |
| | ) |
| and DOES 1-50, | ) |
| | ) |
|    Defendants. | ) |
| _____ | ) |

3 14-CV-67

## JURY TRIAL DEMANDED

## VERIFIED COMPLAINT
## AND PETITION TO VACATE ARBITRATION AWARD

## INTRODUCTION

1. This is an action under 15 U.S.C. § 1692k(d), the private right of action statute of the Fair Debt Collection Practices Act, for damages under the Fair Debt

Collections Practices Act, 15 U.S.C. §1692 et. seq.; Breach of Contract; and Petition to Vacate Arbitration Award.

## JURISDICTION

2. Subject matter jurisdiction in this Court is proper pursuant to the Federal Arbitration Act US Code Title 9, 1-16 ("FAA"); the Fair Debt Collection Practices Act 15 U.S.C. §1692 et. seq. ("FDCPA"); the Citibank, NA Contract; and 28 U.S.C. § 1331.

3. Supplimental jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims as they are so related to Plaintiff's FDCPA and FAA actions that they form part of the same case or controversy.

## PARTIES AND PERSONAL JURISDICTION

4. Plaintiff SHERYL P. FREEMAN ("Plaintiff") is a resident of the state of Georgia over the age of 18 and is authorized by law to bring this claim. Plaintiff is a "consumer" as defined in the FDCPA 15 USC 1692a(3).

5. Defendant CITIBANK, NA ("Citibank") is a corporation organized under the law of the State of South Dakota with a gerneral place of business at 701 E 60th Street N Sioux Falls, SD 57104, and conducts business in Georgia.

6. Defendant CITICORP CREDIT SERVICES, INC ("Citicorp") is an affiliate of Citibank organized under the law of the State of South Dakota with a general place of business at PO Box 6241 Sioux Falls, SD 57117, and conducts business in Georgia servicing accounts for Citibank.

7. BALLARD SPAHR, LLP ("Ballard Spahr") is a Partnership with offices in various states and conducts business in Georgia at 999 Peachtree St. Suite 1000 Atlanta, GA 30309. Ballard Spahr, acting as agent or assignee on behalf of Citibank and Citicorp, is a "debt collector" by their own admittance, as defined by FDCPA § 15 USC 1692a.

8. On information and belief, Ballard Spahr regularly collects debts, and does so on behalf of Citibank and other Creditors in non-public arbitrations administered by the American Arbitration Association and JAMS, the extent of which will be revealed in discovery.

9. At all times herein mentioned, each of the Defendants was an officer, director, agent, assign, servant, employee, and/or joint venture of his/her co-Defendants, and each of them, and at all said times, each Defendant was acting in the full scope of said office, directorship, agency, service, employment, and/or joint venture. Any reference hereafter to "Defendants" without further qualification is meant by Plaintiff to refer to each Defendant, and all of them, named above.

## FACTS

10. On or about October 5, 2012, Plaintiff contracted with JAMS, per the terms of Citibank's contract (the "Contract")(EXHIBIT A), to administer an arbitration against Citibank and Citicorp for various violations of consumer protection statutes and disputes regarding credit card account ending in -9395 (the "Account").

-3-

11. Plaintiff paid her JAMS Consumer Fee of $250 for the arbitration.

12. JAMS designated Case Number 1440003475 to the arbitration.

13. On or about January 24, 2013, Ballard Spahr, acting as agent or assignee on behalf of Citibank and Citicorp, filed an Answer and Counterclaim within arbitration case 1440003475, in which they attempted to collect a debt of $28,357.54 allegedly owed on the Account.

14. The arbitration proceeded, the in-person hearing was held on May 10, 2013 in Plaintiff's hometown area of Griffin, Georgia, and the Award was issued on June 20, 2013.

15. On June 20, 2013, Plaintiff submitted her written "Notice Of Appeal" (EXHIBIT B) pursuant to the terms of Citibank's Contract Arbitration Appeal Clause which states:

***When is an arbitration award final?*** *The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial*

-4-

*review and enforcement as provided by the FAA or other applicable law."*
(see EXHIBIT A)

16. Plaintiff's Notice of Appeal contained her request for a "new" arbitration pursuant to the terms of the Contract.

17. Plaintiff again paid her JAMS Consumer Fee of $250 for a "new" arbitration.

18. JAMS designated case number 1410006333 To the new arbitration and it commenced on August 21, 2013. (EXHIBIT C)

19. JAMS applied the JAMS Consumer Minimum Standards Of Procedural Fairness (the "JAMS Consumer Rules")(EXHIBIT D), along with the JAMS Streamlined Rules (the "JAMS Streamlined Rules")(EXHIBIT E).

20. On August 30, 2013, Defendant Ballard Spahr, acting as agent or assignee on behalf of Defendants Citibank and Citicorp, filed an Answer and Counterclaim within arbitration case 1410006333, in which they attempted to collect a debt of $28,357.54 allegedly owed on the Account. (EXHIBIT F)

21. Defendants stated in their Answer and Counterclaim that: *"9. Citibank is entitled to judgment against Claimant in the amount of $28,357.54, plus additional interest, costs and attorney's fees."* (See EXHIBIT F)

22. Defendants' statement that they are *"entitled"* to costs and attorney's fees violates the plain language within the Contract arbitration clause which states: **"WHO PAYS:** *".....Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of who prevails…"* (see EXHIBIT A)

-5-

23. Defendants' request for costs and attorney's fees also violates JAMS Consumer Rule 7 which states: *" 7. With respect to the cost of arbitration, when a consumer initiates arbitration against a company, the only fee required to be paid by the consumer is $250.00, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's service."* (see EXHIBIT D)

24. Defendants sought to recover costs and fees that they are not legally entitled to recover pursuant to the terms of the Contract and the JAMS Rules.

25. Plaintiff promptly filed an Objection with the Arbitrator(s) on this matter.

26. Defendants' discussed and referenced the prior arbitration within their Appeal Answer stating: *"Citibank's positions on these issues are summarized in Arbitrator Joan Grafstein's thorough and well-reasoned Award in the initial arbitration of this matter."* (see EXHIBIT F)

27. Defendants' also attached the prior null Award as an exhibit within their Appeal Answer.

28. Defendants' discussion of the prior arbitration and exposure of the prior null Award forever tainted and corrupted the New arbitration.

29. Defendants' exposure breached the terms of the Contract which states the appeal is to be a "new" arbitration and that the Arbitrator(s) are to consider all factual and legal issues "anew."

30. Defendants' exposure was intentional to influence and sway the Panel,

including the outcome of the new arbitration for their benefit.

31. Defendants' exposure prevented the Arbitrator(s) from acting in the capacity required by the terms of the Contract arbitration appeal clause as the "new" arbitration could not be conducted "anew" if the Panel was reviewing the first Arbitrator's work.

32. Plaintiff promptly filed an Objection with the Arbitrator(s) on this matter.

33. The three(3) Arbitrator Panel (the "Panel") was appointed to the New Arbitration on September 12, 2013. (EXHIBIT G)

34. Approximately five(5) months later, JAMS scheduled the First Preliminary Scheduling Conference Call (the "Call") to be held on February 12, 2014.

35. The Call involved Plaintiff, Ballard Spahr, and the Panel's Chair Arbitrator, Judge Robertson.

36. The Panel's first action on the Call was to issue their decisions on Plaintiff's long outstanding Objections to the various issues described above.

37. The Panel issued their decision on Plaintiff's Objection to Defendants' request to be awarded costs and attorney's fees by stating that Defendants must pay all costs, fees, and expenses of the arbitration above Plaintiff's $250 Consumer Fee.

38. The Panel discussed Plaintiff's Objection to Defendants' Answer and Counterclaim that discussed and exposed the prior null Award by admitting that the Panel had originally believed the appeal was simply a review of the prior arbitration.

39. The Panel then issued their decision that it in fact was to be a "new" arbitration, thus the portions of Defendants' Answer that discussed the prior arbitration, and their exhibit that revealed the prior null Award were STRICKEN.

40. The panel then stated: "*We assure everyone that we have not read the earlier Award. We don't know anything other than Ms. Freeman's Demand for arbitration and we are starting fresh.*"

41. From information and belief, the Panel had in fact already read and reviewed the prior arbitration due to the Panel's admittance of their original belief that the appeal was simply a review of the prior arbitration, due to Defendants exposure, and due to the lapse of five(5) months to perform a review.

42. Due to Plaintiff's concerns by the Panel's statements and by Defendant's exposure, Plaintiff specifically asked the Panel during the Call: "*So, the Panel has not read the Complaint, Answer, and Counterclaim?*"

43. The Panel responded: "*Yes, the Panel has read the Formal Pleadings; the Complaint, and Answer, and Counterclaim.*"

44. Plaintiff then responded: "*The Award is within Citibank's Answer, and you just said the Panel has read the Answer.*"

45. The Panel's Chair Arbitrator, Judge Robertson, then stumbled for words, he even laughed, and then stated: "*You know what, I really didn't read the Answer all that carefully, and I really don't know what the Award is.*"

46. The Panel acted with misconduct by their contradictive statements which were deceptive.

47. The Panel exceeded their powers by proceeding with the arbitration after their failure to conduct the Appeal per the terms of the Contract which prejudiced Plaintiff's contractual right to a New arbitration.

48. Plaintiff recorded the entire Call and her affidavit attesting to such is attached hereto. (EXHIBIT H)

49. During the Call, the Panel stated that they were going to move the arbitration very rapidly, due to one of the Panel's appointed Arbitrators leaving JAMS soon and his desire to wrap up his commitments.

50. The Panel scheduled an in-person hearing for March 5, 2014, which was to be in a mere three(3) weeks following the February 12, 2014 Call.

51. The Panel's extreme rush to conclude the arbitration prejudiced Plaintiff's right to due process by undue means.

52. During the Call, the Panel asked the Parties if the date of March 5, 2014 was acceptable for the hearing.

53. Plaintiff voiced her concerns about having enough time to conduct and complete discovery within the three(3) week period before the hearing date.

54. The Panel responsed that even though this was a "new" procedure, there was not going to be a new round of discovery.

55. Plaintiff requested to the Panel that she have the opportunity to perform discovery to obtain evidence needed to support her case and defense per JAMS Consumer Rule: *"(9) The arbitration provision must allow for the discovery or exchange of non-privileged information relevant to the dispute."* (see EXHIBIT D)

56. The Panel stated: *"Anything not previously received, Plaintiff was entitled to it, and Defendants will be required to submit before the hearing."*

57. The Panel issued an Order on discovery immediately following the February 12, 2014 Call which stated:

a) Plaintiff had two(2) days to prepare and submit her discovery requests to Defendants by February 14, 2014,

b) Defendants then had seven(7) days to produce the information by February 21, 2014,

c) And a stipulation that if there was any issue related to the requests or the responses, the Parties must immediately object by email.

58. Plaintiff complied with the Discovery Order.

59. Defendants violated the Discovery Order by failing to object to any issue related to requests immediately by email.

60. Defendants deliberately waited to file any Objection to Plaintiff's discovery requests until day six(6) of their seven(7) days allowed to produce the requested information.

61. Defendants were well aware of the fact that their non-compliance caused one(1) day remaining to complete Discovery.

62. Defendants were well aware of the fact that the Panel was rapidly rushing the arbitration.

63. Defendants were well aware that the hearing was only twelve(12) days from the Panel's Ordered discovery deadline date.

64. Defendants' bad faith action and intentional misconduct violated JAMS Consumer Rule *"(9) The arbitration provision must allow for the discovery or exchange of non-privileged information relevant to the dispute."*

. 65. Defendants' action prejudiced Plaintiff's right to discovery which caused Plaintiff harm in her ability to present her case and defense.

66. Plaintiff immediately filed an Objection with the Panel on this matter on February 20, 2014 which included:

a) Objection to Defendants' noncompliance to the Panel's discovery Order,

b) Request for the Panel to compel Defendants to comply with discovery,

c) Request for the Panel to delay the hearing until discovery could be completed,

d) Request for the Panel to schedule a "discovery dispute conference" per JAMS Streamlined Rule: *"13(c).* **Exchange of Information:** *The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference **shall** be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute."* (emphasis added) (see EXHIBIT E)

67. On February 21, 2014, the Panel simply issued an Order on the matter without arranging a discovery dispute conference as Plaintiff requested per JAMS Streamline Rule 13(c).

68. The Panel acted with misconduct by exceeding their powers in violating JAMS Streamlined Rule 13(c) which denied Plaintiff her right to a discovery dispute conference as required by the governing rule.

69. The Panel's February 21, 2014 Order prejudiced Plaintiff by denying her

right to discovery which contradicted the Panel's previous Order allowing Plaintiff to conduct discovery, thus causing harm to Plaintiff.

70. The Panel's Order also denied Plaintiff's request to postpone the hearing until discovery could be completed which contradicted the Panel's previous statement requiring Defendants to submit requested information before the hearing.

71. The Panel caused harm to Plaintiff by prejudicing her ability to present her case and defense.

72. Within the Panel's February 21, 2014 Order denying Plaintiff's discovery, Plaintiff realized that the Panel had stated specific wording from Plaintiff's discovery requests which the Panel could not have known as Plaintiff had submitted her discovery requests only to Defendants, not to JAMS.

73. Plaintiff realized the fact that there had obviously been ex parte communication between the Panel and Defendants which is strictly prohibited by JAMS Streamlined Rule: *"11. **Ex Parte Communications.** No Party will have any ex parte communication with the Arbitrator regarding any issue related to the Arbitration. "*

74. The Panel violated JAMS Streamlined Rule 11.

75. Defendants violated JAMS Streamlined Rule 11.

76. Plaintiff promptly filed an Objection with the panel on the matter on February 24, 2014 which included:

a) Objection to the Panel's denial of discovery,

b) Objection to the Panel's violation of JAMS Streamlined Rule 13(c) regarding

denial of a dispute conference,

c) Objection to the Panel's and Defendants' violation of JAMS Streamlined Rule 11 regarding ex parte communication,

d) Plaintiff's request for reconsideration to allow Plaintiff's needed discovery,

e) Plaintiff's request for reconsideration to postpone the hearing until Defendants complied with discovery.

77. Within Defendants' response to Plaintiff's Objection, Defendants admitted to their ex parte communication with the Panel.

78. Defendants also admitted in their response that the Panel actually initiated the ex parte communication with Defendants by privately reaching out to only Defendants regarding Plaintiff's discovery dispute.

79. On February 25, 2014, the Panel issued an Order on Plaintiff's Objection on the matter (EXHIBIT I) which stated:

a) Plaintiff's objections to the Panel's violation of JAMS Streamlined Rule 13(c) (denial of dispute conference), and violation of JAMS Streamlined Rule 11(ex parte communication), were OVERRULED,

b) Plaintiff's objection to Defendants' violation of JAMS Streamlined Rule 11(ex parte communication) was OVERRULED.

c) Plaintiff's request for reconsideration to allow discovery was DENIED,

d) Plaintiff's request for reconsideration to postpone the hearing was DENIED,

e) And the March 5, 2014 hearing would proceed.

80. The Panel's serious misconduct of ex parte communication shows the

Panel's evident partiality, blatant misbehavior, and corruption within the Panel, which forever prejudiced Plaintiff's right to a fair arbitration.

81. The Panel exceeded their powers by overruling their own serious violations of ex parte communication, denial of discovery, and refusal to postpone the hearing for cause.

82. Therefore, on February 25, 2014, Plaintiff filed with JAMS her *"Objection to Tainting Of The Arbitration And Challenge To Continued Service For Cause"* (the "Challenge")*, per JAMS Streamlined Rule: "12(j): **Arbitrator Selection and Replacement**. At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties who may respond within seven (7) days of service of the challenge. JAMS shall make the final determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final."*

83. Plaintiff's Challenge included the following:

a) CAUSE ONE: Defendants' submission of the null Award and the Panel's admittance to reading the Pleadings forever tainted Plaintiff's New arbitration,

b) CAUSE TWO: The Panel's violation of and non compliance with JAMS Streamlined Rule 13(c): ***Exchange of Information*** *The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference **shall** be*

_arranged with the Arbitrator, either by telephone or in person,_ and the Arbitrator

_shall decide the dispute._ (emphasis added)

c) CAUSE THREE: The Panel's and the Defendants' violation of and non compliance with JAMS Streamlined Rule 11: **_Ex Parte Communications._** _No Party will have **any** ex parte communication with the Arbitrator regarding **any** issue related to the Arbitration._ (emphasis added)

d) Plaintiff's demand for the immediate recusal of the Panel due to corruption.

e) Plaintiff's objection to any progression of the tainted arbitration until a new neutral Panel could be appointed.

84. Within Defendants' Response to Plaintiff's Challenge, they did admit the following:

a) Defendants did submit the null Award within their Appeal Answer and Counterclaim.

b) The Panel did initiate the ex parte communication and Defendants did respond without copying Plaintiff.

85. On February 26, 2014, Plaintiff filed with JAMS her _"Motion To Stay Proceedings To File A Motion To Compel Citibank et. al. To Arbitrate Per Contractual Terms Of The Agreement"_ (the "Motion To Stay"), _which stated: "Citibank and Citicorp have failed to arbitrate per the terms of Citibank's own contract arbitration appeal clause. Citibank's and Citicorp's decision to include the previous null and void award with their Answer and also continually referencing the previous arbitration within their pleadings has clearly violated the contract language, influ-_

*enced the Panel, and tainted the contractual "anew" arbitration."*

86. Within Defendants' Response to Plaintiff's Motion To Stay, they did admit that they failed to honor the terms of the Contract by stating: *"Citibank reasonably interpreted the arbitration provision to provide for a de novo review of the prior arbitration decision."*

87. Defendants should know and understand the clear language and terms of their own arbitration appeal clause contained within the Contract that they wrote.

88. Defendants discussed and referenced the prior arbitration within the New arbitration numerous times as follows:

a) Defendants did discuss and reference the prior arbitration within their August 30, 2013 Appeal Answer stating: *"Citibank's positions on these issues are sum-marized in Arbitrator Joan Grafstein's thorough and well-reasoned Award in the initial arbitration of this matter."*

b) Defendants did attach the null Award as an exhibit within their Appeal Answer and Counterclaim.

c) Defendants did discuss the prior arbitration in their February 3, 2014 Response To Plaintiff's Objection To Merit's Hearing stating: *"the parties have already en-gaged in extensive discovery in the first arbitration proceeding. Citibank has al-ready produced to Claimant all non-privileged information relevant to this dispute, .... Claimant received extensive discovery before the first arbitration hearing in this matter, ..."*

d) Defendants did discuss the prior arbitration in their February 18, 2014 Response

And Objection To Plaintiff's Discovery Requests stating: *"Claimant has received hundreds of documents, conducted an examination of Citibank's witness and has had the benefit of a full blown hearing to obtain information supporting her claims or defenses."*

e) Defendants did discuss the prior arbitration in their February 21, 2014 Objection To Claimant's Discovery Requests stating: *"In connection with the prior arbitration proceeding, Claimant received 277 pages of documents. These documents include the Claimant's application for the Citi credit card account at issue (the "Account"), executed by the Claimant, terms and conditions governing the Account, both before closure and at the time the Account closed. Also produced were Account notes reflecting all calls made and received related to the Account. Finally, Citibank produced about 6 years of Account statements covering the period January 2004 through July 2010, which reflect Claimant's charges and payments on the Account. Claimant was given the opportunity and did, in fact, examine Citibank's witness and record custodian regarding these Account documents at the first arbitration hearing."*

f) Defendants did discuss the prior arbitration in their February 24, 2014 Letter to JAMS stating: *"Additionally, Respondents' witness previously testified regarding these documents in connection with the previous arbitration proceedings."*

89. On February 28, 2014, Plaintiff received a letter from The JAMS Office of General Council, signed by Jay Welch, in the matter of Plaintiff's Challenge to the continued service of the corrupt Panel in which The JAMS Office of General

Council denied Plaintiff's request for disqualification.

90. Arbitration is granted by and governed by Citibank's Contract and the Federal Arbitration Act, neither of which mention nor give any authority to The JAMS Office of General Council to decide or present rulings.

91. On March 3, 2014, Plaintiff submitted an Objection to The JAMS Office of General Council's ruling and denial of Plaintiff's request for the disqualification of the Panel.

92. On February 27, 2014, the Panel issued an Order denying Plaintiff's Motion To Stay, thus the March 5, 2014 hearing would proceed regardless of all the corruption.

93. On March 3, 2014, Plaintiff submitted an Objection to the Panel's denial of Plaintiff's Motion To Stay.

94. At the March 5, 2014 hearing, Defendants re-submitted their August 30, 2013 Answer and Counterclaim as evidence, which still included their reference to the prior arbitration, which is a direct violation of the Panel's February 12, 2014 Order that deemed the portion of Defendants' Answer containing reference to the prior arbitration be STRICKEN.

95. The Panel showed evident partiality by accepting Defendants' re-submitted Answer as evidence which is a direct violation and contradiction of their own Order stricking the material.

96. On March 12, 2014, Defendants submitted their Post-Hearing Submission in which they claimed to be entitled to be awarded their counterclaim debt *"per the*

*terms of the Contract."*

97. Defendants relied upon and upheld the terms of the Contract for their own benefit, but ignored and breached the terms of the same Contract when it provided Plaintiff the right to a "New" arbitration.

98. Defendants do not have the right to pick and choose what parts of the Contract apply and what parts do not apply.

99. Defendants also stated in their Post-Hearing Submission that they were *"entitled"* to be awarded costs, expenses, and attorney's fees which is a direct violation of the terms of the Contract arbitration clause which states: ***"WHO PAYS:*** *"Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of who prevails"* (see Exhibit A)

100. Defendants' statement that they are "entitled" to costs, expenses, and attorney's fees also violates JAMS Consumer Rule: "*7 With respect to the cost of arbitration, when a consumer initiates arbitration against a company, the only fee required to be paid by the consumer is $250.00, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's service."*

101. Defendants' attempt to recovery costs, expenses, and attorney's fees directly violated the Panel's February 12, 2014 Order which stated: *"Ms. Freeman's objection to Citi's request for costs and attorney's fees is SUSTAINED. The only fee Ms. Freeman is required to pay is $250, and that has been paid."*

102. Defendant Ballard Spahr stated within Defendants' Post-Hearing Submission that: *"It is clear that Citibank's attorneys are engaged to collect the debt in defending this action and prosecuting the counterclaim."*

103. Defendant Ballard Spahr's statement that they are engaged in collecting a debt confirms that they are in fact a debt collector subject to the FDCPA.

104. On April 4, 2014, the Panel issued the Appeal Award. (EXHIBIT J)

105. The Panel stated within the Appeal Award that the arbitration is governed by the terms of the Contract, by JAMS Streamlined Rules, and by JAMS Consumer Rules, yet the Panel violated numerous JAMS Rules, overruled Plaintiff's objections to their own violations, failed to adhere to the Contract terms in performing the arbitration, and issued the Appeal Award through corruption.

106. Within the Appeal Award, the Panel reiterated their statement from the Call stating: *"None of the three arbitrators had read the previous award, and Ms. Freeman was assured that none would do so"*, and with footnote: *"1 At one point in that telephone conference, Arbitrator Robertson said that he had "reviewed the pleadings." He did not, however, read Citi's answer, or the attached copy of the earlier award."*

107. The Panel's aforementioned statement is blatantly false as Plaintiff recorded Arbitrator Robertson saying that the Panel had in fact read the *"Formal Pleadings; the Complaint, and Answer, and Counterclaim",* followed by him saying: *"I really didn't read the Answer all that carefully."*

108. The Panel admits in the Appeal Award that they proceeded with the arbi-

tration despite Plaintiff's numerous objections, requests to postpone the hearing for cause, requests for disqualification for cause, demand for recusal, and her motions to stay for cause.

109. The Panel admits in the Appeal Award to their serious misconduct of ex parte communication in emailing only Defendants pertaining to the arbitration.

110. The Panel issued the Appeal Award through extreme corruption by Defendants' numerous bad faith actions and breach of Contract which prejudiced Plaintiff's right to a New arbitration.

111. The Panel issued the Appeal Award through extreme corruption by the Panel's continued acts of bias, misconduct, undue means, corruption, evident partiality, misbehavior, violations of the JAMS Rules, viewing the prior arbitration information, condradicting their own statements, violating their own Orders, ignoring the terms of the Contract, refusing of evidence pertinent and material to the controversy, refusing to postpone the hearing for cause, participating in ex parte communication with Defendants, and exceeding their powers which all prejudiced Plaintiff's right to have a fair arbitration and hearing.

## COUNT ONE
## VIOLATIONS OF THE FDCPA

112. Plaintiff repeats, realleges, and incorporates to the foregoing paragraphs as fully set forth herein.

113. Plaintiff brings this claim for relief against Defendant Ballard Spahr un-

der the FDCPA 15 U.S.C. §1692 et. seq.

114. Defendant Ballard Spahr is a "debt collector" as that term is defined by the FDCPA 15 U.S.C. § 1692a(6).

115. The "debt" alleged to be owed by Plaintiff to Defendant Citibank is a personal consumer debt for transactions primarily for personal, family, or household purposes as defined by FDCPA 15 U.S.C. § 1692a(5).

116. Plaintiff is a "consumer" as defined by FDCPA 15 U.S.C. § 1692a(3).

117. Defendant's violations of the FDCPA include, but are not limited to the following:

118. Defendant Ballard Spahr's attachment and exposure of the prior arbitration's null Award, which tainted and corrupted the "new" arbitration, violates FDCPA 15 U.S.C. § 1692e(5) "taking any action that cannot legally be taken or that is not intended to be taken"; FDCPA 15 U.S.C. § 1692d "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"; FDCPA 15 U.S.C. § 1692e(10)"The use of any false representation or deceptive means to collect or attempt to collect any debt"; FDCPA 15 U.S.C. § 1692e(2)"The false representation of the character, amount, or legal status of any debt"; and FDCPA 15 U.S.C. § 1692f "Any unfair or unconscionable means to collect or attempt to collect the alleged debt."

119. Defendant Ballard Spahr's numerous discussions and references to the prior arbitration within the New arbitration, which tainted and corrupted the "new"

arbitration, violates FDCPA 15 U.S.C. § 1692e(5) "taking any action that cannot legally be taken or that is not intended to be taken"; FDCPA 15 U.S.C. § 1692d "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"; FDCPA 15 U.S.C. § 1692e(10)"The use of any false representation or deceptive means to collect or attempt to collect any debt"; FDCPA 15 U.S.C. § 1692e(2)"The false representation of the character, amount, or legal status of any debt"; and FD-CPA 15 U.S.C. § 1692f "Any unfair or unconscionable means to collect or attempt to collect the alleged debt."

120. Defendant Ballard Spahr's intentional violations of the JAMS Consumer Rules and the JAMS Streamlined Rules, which governed the arbitration, violates FDCPA 15 U.S.C. § 1692e(5) "taking any action that cannot legally be taken or that is not intended to be taken"; FDCPA 15 U.S.C. § 1692d "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"; FDCPA 15 U.S.C. § 1692e(10)"The use of any false representation or deceptive means to collect or attempt to collect any debt"; FDCPA 15 U.S.C. § 1692e(2)"The false representation of the character, amount, or legal status of any debt"; and FDCPA 15 U.S.C. § 1692f "Any unfair or unconscionable means to collect or attempt to collect the alleged debt."

121. Defendant Ballard Spahr's request for and statement in arbitration that they are "entitled" to recover costs, expenses, and attorney's fees, which is not

authorized under the Contract, violates FDCPA 15 U.S.C. § 1692e(5) "taking any action that cannot legally be taken or that is not intended to be taken"; FDCPA 15 U.S.C. § 1692d "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"; FDCPA 15 U.S.C. § 1692e(10)"The use of any false representation or deceptive means to collect or attempt to collect any debt"; FDCPA 15 U.S.C. § 1692e(2)"The false representation of the character, amount, or legal status of any debt"; and FDCPA 15 U.S.C. § 1692f "Any unfair or unconscionable means to collect or attempt to collect the alleged debt."

122. Defendant Ballard Spahr's attempt and intention to procure an Award, and ultimately the enforcement of a judgement, against Plaintiff through acts of deception and corruption in the arbitration violates FDCPA 15 U.S.C. § 1692e(5) "taking any action that cannot legally be taken or that is not intended to be taken"; FDCPA 15 U.S.C. § 1692d "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"; FDCPA 15 U.S.C. § 1692e(10)"The use of any false representation or deceptive means to collect or attempt to collect any debt"; FDCPA 15 U.S.C. § 1692e(2)"The false representation of the character, amount, or legal status of any debt"; and FDCPA 15 U.S.C. § 1692f "Any unfair or unconscionable means to collect or attempt to collect the alleged debt."

123. Wherefore, Plaintiff has been damaged by the Award that the Defendants obtained against Plaintiff.

## COUNT TWO
## BREACH OF CONTRACT (SOUTH DAKOTA)

124. Plaintiff repeats, realleges, and incorporates to the foregoing paragraphs as fully set forth herein.

125. Plaintiff brings this claim for relief against Defendants Citibank and Citicorp for Breach Of Contract under South Dakota law (SDCL 21-2-1), which governs the Contract.

126. A contract exists between Plaintiff and Defendants Citibank and Citicorp.

127. Defendants Citibank and Citicorp breached the Contract by failing to arbitrate pursuant to the terms of the Contract.

128. Defendants Citibank's and Citicorp's breach was material.

129. Plaintiff arbitrated pursuant to the terms of the Contract.

130. Plaintiff notified Defendants Citbank and Citicorp of their failure to arbitrate per the terms of the Contract.

131. Wherefore, as a direct result of Defendants Citibank's and Citicorp's breach of contract by failing to honor Plaintiff's right to an appeal under the terms of their own Contract, Plaintiff has suffered actual damages in the amount of the Award Defendants obtained against Plaintiff.

## COUNT THREE
## BREACH OF CONTRACT (GEORGIA)

132. Plaintiff repeats, realleges, and incorporates to the foregoing paragraphs as fully set forth herein.

133. Plaintiff brings this claim for relief against Defendants Citibank and Citi-corp for Breach Of Contract under Georgia law (OCGA 13-3-1).

134. A contract exists between Plaintiff and Defendants Citibank and Citicorp.

135. Defendants Citibank and Citicorp breached the Contract by failing to arbitrate pursuant to the terms of the Contract.

136. Defendants Citibank's and Citicorp's breach was material.

137. Plaintiff arbitrated pursuant to the terms of the Contract.

138. Plaintiff notified Defendants Citbank and Citicorp of their failure to arbi-trate per the terms of the Contract.

139. Wherefore, as a direct result of Defendants Citibank's and Citicorp's breach of contract by failing to honor Plaintiff's right to an appeal under the terms of their own Contract, Plaintiff has suffered actual damages in the amount of the Award Defendants obtained against Plaintiff.

## PETITION TO VACATE ARBITRATION AWARD

140. Plaintiff repeats, realleges, and incorporates to the foregoing paragraphs as fully set forth herein.

141. Plaintiff hereby petitions this court to vacate the Appeal Award issued on April 4, 2014, pursuant to the Federal Arbitration Act ("FAA") 9 U.S. Code § 10.

142. The Appeal Award was procured by corruption and by undue means.

143. The Panel was corrupt, acted with evident partiality, was guilty of mis-conduct in refusing to postpone the hearing upon sufficient cause shown, refused

to hear evidence pertinent and material to the controvercy, acted with misbehavior, participated in ex parte communication, and exceeded their powers.

144. Plaintiff's rights were prejudiced by the Panel, thus the award must be vacated by this Court.

145. NOW THEREFORE, Plaintiff petitions this Court to vacate the Appeal Award issued on April 4, 2014.

## PRAYER FOR RELIEF

146. Plaintiff repeats, realleges, and incorporates to the foregoing paragraphs as fully set forth herein.

147. WHEREFORE, Plaintiff prays for judgement against Defendants and in favor of Plaintiff as follows:

a) On COUNT ONE claim for relief for statutory damages of $1000;

b) On COUNT TWO claim for relief for actual and compensatory damages of $28,357.54;

c) On COUNT THREE claim for relief for actual and compensatory damages of $28,357.54;

d) For grant of Petition To Vacate Arbitration Award;

e) For injunction barring Defendants from any collection action on the Award;

f) For a declaration declaring void any Award Defendants have obtained against Plaintiff;

g) On all claims for relief for costs, fees, and such other and further relief as this Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff, Sheryl P. Freeman, hereby demands a trial by jury of all triable issues of fact in the above-captioned case.

Respectfully submitted,


Sheryl P. Freeman

1721 Dunn Road

Molena, GA 30258

770-468-8887

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF GEORGIA

Plaintiff, SHERYL P. FREEMAN, states as follows:

    1. I am the Plaintiff in this civil proceeding.

    2. I have read the above-titled civil Complaint prepared by myself and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

    3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or reversal of existing law.

    4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harrass any Defendant(s), cause any unnecessary delay to any Defendant(s), or create a needless increase of the cost of litigation to any Defendant(s), named in the Complaint.

    5. I have filed this Complaint in good faith and solely for the purposes set forth within it.

    6. Each and every exhibit I have attached to this Complaint is a true and correct copy of the original.

    7. Except for clearly indicated redactions where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I, SHERYL P. FREEMAN, hereby declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

DATE: _April 28, 2014_          _Sheryl P. Freeman_

SHERYL P. FREEMAN

-29-