## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

SHERYL P. FREEMAN,

        Plaintiff,

    v.

CITIBANK, N.A., *et al.*,

        Defendants.

CIVIL ACTION FILE NO.

3:14-cv-00067-TCB-RGV

## MAGISTRATE JUDGE'S FINAL REPORT, RECOMMENDATION, AND ORDER

This matter is before the Court on *pro se* plaintiff Sheryl P. Freeman's

("Freeman") "Verified Complaint and Petition to Vacate Arbitration Award,"

brought against defendants Citibank, N.A. ("Citibank"), Citicorp Credit Services,

Inc. ("Citicorp"), and Ballard Spahr LLP ("Ballard Spahr"), collectively referred to

as "defendants." [Doc. 3].[1] Also pending before the Court are defendants Citibank

and Citicorp's ("Citi defendants") Cross-Petition to Confirm Arbitration Award,

[Doc. 15], Motion for Judgment on the Pleadings, [Doc. 17], and Motion to Stay

Discovery and Pretrial Deadlines, [Doc. 19]; defendant Ballard Spahr's Motion to

Dismiss for failure to state a claim, [Doc. 18]; Freeman's Motion to Compel

Arbitration and Stay Proceedings Pending Arbitration, [Doc. 26], and Motion to

---

[1] Freeman has also named "Does 1-50" as defendants in this action. <u>See</u> [Doc. 3 at 1]. The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

Extend Time to Respond to Defendants' Motion to Dismiss and Motion for

Judgment on the Pleadings, [Doc. 28]; and defendants' Motion for Leave to File Sur-

Reply to Freeman's reply brief in support of her motion to compel arbitration, [Doc.

34].

For the reasons that follow, defendants' Motion for Leave to File Sur-Reply to

Freeman's reply brief in support of her motion to compel arbitration, [Doc. 34], and

Citi defendants' Motion to Stay Discovery and Pretrial Deadlines, [Doc. 19], are

**GRANTED**,[2] and Freeman's Motion to Extend Time to Respond to Defendants'

Motion to Dismiss and Motion for Judgment on the Pleadings, [Doc. 28], is

**DENIED**, and it is **RECOMMENDED** that Freeman's Petition to Vacate Arbitration

Award, [Doc. 3], and her Motion to Compel Arbitration and Stay Proceedings

Pending Arbitration, [Doc. 26], be **DENIED**; that Citi defendants' Cross-Petition to

Confirm Arbitration Award, [Doc. 15], be **GRANTED**; and that defendant Ballard

---

[2] In the Motion to Stay Discovery and Pretrial Deadlines, Citi defendants seek a stay of their obligation to serve initial disclosures, participate in a Rule 26(f) conference, and prepare and file a report of that conference and a proposed discovery plan until after the Court rules on their Motion for Judgment on the Pleadings and Cross-Petition to Confirm Arbitration Award. See [Doc. 19 at 2, 4]. Since Freeman has not responded to Citi defendants' motion to stay, the motion is deemed unopposed. See LR 7.1B, NDGA. Upon consideration of the unopposed motion to stay, the Court hereby **GRANTS** the motion, [Doc. 19], and **ORDERS** that the parties' obligations to participate in a Rule 26(f) conference and to file initial disclosures and a joint preliminary report and discovery plan be stayed until the District Judge reviews this Report and Recommendation on Citi defendants' Motion for Judgment on the Pleadings and Cross-Petition to Confirm Arbitration Award.

Spahr's Motion to Dismiss, [Doc. 18], and Citi defendants' Motion for Judgment on the Pleadings, [Doc. 17], be **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    The First Arbitration

This case initially arose out of a dispute regarding a credit card account that Freeman opened with Citibank in 2003.  <u>See</u> [Doc. 3-6 at 16].[3]  Upon opening the

---

[3] Generally, the Court "may not consider matters outside the pleadings without converting [a motion to dismiss or a motion for judgment on the pleadings] to a motion for summary judgment[.]"  <u>Redding v. Tuggle</u>, No. 1:05-cv-2899-WSD, 2006 WL 2166726, at *5 (N.D. Ga. July 31, 2006), adopted at *1; <u>see also</u> <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002); <u>Ramey v. Interstate Fire & Cas. Co.</u>, Case No. 12-CV-80857, 2013 WL 9055938, at *3 (S.D. Fla. Mar. 11, 2013); <u>Omega Patents, LLC v. Lear Corp.</u>, No. 6:07-cv-1422-Orl-31DAB, 2008 WL 821886, at *1 (M.D. Fla. Mar. 20, 2008).  However, the Court may consider an exhibit without converting a motion to dismiss or a motion for judgment on the pleadings to a motion for summary judgment if the exhibit is "central to the plaintiff's claim and the authenticity of the document is not challenged."  <u>Adamson v. Poorter</u>, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (per curiam) (unpublished) (<u>citing</u> <u>Horsley</u>, 304 F.3d at 1134; <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam); <u>Ramey</u>, 2013 WL 9055938, at *3; <u>see also</u> <u>Atwater v. Nat'l Football League Players Ass'n</u>, Civil Action No. 1:06-CV-1510-JEC, 2007 WL 1020848, at *3 (N.D. Ga. Mar. 29, 2007); <u>Cobb v. Marshall</u>, 481 F. Supp. 2d 1248, 1254 n.2 (M.D. Ala. 2007).  The documents at issue here are central to Freeman's claims and she has not challenged their authenticity.  Accordingly, the Court will consider the documents attached to the filings in this case without converting the motion to dismiss or the motion for judgment on the pleadings into motions for summary judgment.  <u>See</u> <u>Ramey</u>, 2013 WL 9055938, at *3; <u>JP Morgan Chase Bank, N.A. v. Sampson</u>, Civil Action No. 1:10-cv-1666-JEC, 2012 WL 949698, at *1 n.1 (N.D. Ga. Mar. 20, 2012) (citation omitted); <u>Metal Morphosis, Inc. v. Acorn Media Publ'g, Inc.</u>, 639 F. Supp. 2d 1367, 1374 (N.D. Ga. 2009 ) (<u>citing</u> <u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th Cir. 2005)); <u>Zinn v. GMAC  Mortg.</u>, No. 1:05 CV 01747 MHS, 2006 WL 418437, at *3 (N.D. Ga. Feb. 21, 2006).

account, Freeman entered into a credit card agreement ("card agreement"), see [Doc. 3-1], with Citibank that included an agreement to arbitrate any disputes between the parties, see [id. at 5-6]. In October of 2012, Freeman commenced arbitration against Citi defendants with the arbitration firm JAMS, pursuant to the arbitration provisions of the card agreement. See [Doc. 3 at 3 ¶ 10; Doc. 3-1 at 6; Doc. 3-6 at 8; Doc. 15 at 30 ¶ 3].[4] Freeman alleged violations of various "consumer protection statutes," and Citi defendants counterclaimed to recover the outstanding balance on Freeman's credit card account, which at the time was $28,357.54.[5] See [Doc. 3 at 3 ¶ 10, 4 ¶ 13; Doc. 3-6 at 8, 11; Doc. 15 at 13]. After the parties engaged in discovery,[6] an in-person arbitration hearing was held in Griffin, Georgia, on May 10, 2013, and the arbitrator issued an award in favor of Citi defendants as to all claims and

---

[4] Citi defendants were represented by defendant Ballard Spahr throughout the entire course of their arbitration with Freeman. See [Doc. 3 at 4 ¶ 13, 5 ¶ 20; Doc. 3-6 at 2-6; Doc. 15 at 3 ¶ 13].

[5] In addition to seeking the balance on Freeman's account, Citi defendants had also initially requested costs and attorney's fees, see [Doc. 3-6 at 10-11], but they withdrew that request prior to the issuance of the award, see [id. at 24 (initial arbitration award stating that "there is no issue of costs and fees for the Arbitrator to decide in this arbitration")].

[6] Citi defendants produced nearly 300 pages of documents in the course of discovery, including 6 years' worth of Freeman's account statements, and Freeman also had the opportunity to examine Citi defendants' witnesses and records custodian regarding her account information. See [Doc. 15-3 at 2; Doc. 15-10 at 14; Doc. 16 at 4].

counterclaims on June 20, 2013.  See [Doc. 3 at 4 ¶ 14; Doc. 3-6 at 8-25; Doc. 15 at 30 ¶ 4].

## B.    The Appellate Arbitration

Freeman filed a Notice of Appeal with JAMS on the day the award was issued, in which she requested a "new arbitration before a panel of three neutral arbitrators designated by JAMS."  See [Doc. 3 at 4 ¶ 15; Doc. 3-2]; see also [Doc. 3-9 at 5; Doc. 15 at 31 ¶ 5; Doc. 16 at 4].[7]  The appellate arbitration began on August 21, 2013, see [Doc. 3 at 5 ¶ 18; Doc. 3-3], before a panel of three retired judges, including former United States District Judge James Robertson ("Arbitrator Robertson"), who served as the panel's Chair Arbitrator over the appellate proceedings, see [Doc. 3 at 7 ¶ 33; Doc. 3-7; Doc. 15-10 at 8; Doc. 16 at 5]; see also [Doc. 3-9 at 2].  The applicable rules governing the appeal included JAMS Streamlined Arbitration Rules and

---

[7] The arbitration provisions of the card agreement provided for an appeal as follows:

> **When is an arbitration award final?**  The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award.  The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm.  The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority.  Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator.  An award by a panel is final and binding on the parties after fifteen days has passed.

[Doc. 3-1 at 6].

Procedures, <u>see</u> [Doc. 3 at 5 ¶ 19; Doc. 3-3; Doc. 3-5; Doc. 3-9 at 4], and JAMS

Minimum Standards of Procedural Fairness, <u>see</u> [Doc. 3 at 5 ¶ 19; Doc. 3-4]; <u>see also</u>

[Doc. 3-7 at 2].

On August 30, 2013, Citi defendants filed an Answer and Counterclaim to

Freeman's complaint in the appellate arbitration, [Doc. 3 at 5 ¶ 20; Doc. 3-6; Doc. 15

at 31 ¶ 6], once again seeking to recover the outstanding balance due on Freeman's

account, as well as "additional interest, costs and attorney's fees," [Doc. 3-6 at 4-5];

<u>see also</u> [Doc. 3 at 5 ¶ 21; Doc. 3-9 at 5; Doc. 16 at 4].   In their Answer and

Counterclaim, Citi defendants also referenced the prior arbitration award of June 20,

2013, and they attached a copy of the prior award to their pleadings.  <u>See</u> [Doc. 3 at

6 ¶¶ 26-27; Doc. 3-6 at 2 (Citi defendants' Answer and Counterclaim, briefly stating

that Citi defendants' "positions on the[] issues [in the appellate arbitration]" were

"summarized in . . . [the] Award in the initial arbitration," and attaching a copy of

that award as Exhibit A); Doc. 16 at 4].   Freeman filed an objection to Citi

defendants' request for costs and attorney's fees, and to their reference and inclusion

of the prior award in their Answer and Counterclaim.  <u>See</u> [Doc. 3 at 6 ¶ 25, 7 ¶ 32;

Doc. 16 at 4-5].

### 1.    *Conference Call and Pretrial Order of February 12, 2014*

On February 12, 2014, Arbitrator Robertson conducted a preliminary conference call with Freeman and counsel for Citi defendants.  See [Doc. 3 at 7 ¶¶ 34-35]; see also [Doc. 3-8].  During the call, Arbitrator Robertson allegedly stated that the panel "had originally believed the appeal was [] a review of the prior arbitration," [Doc. 3 at 7 ¶ 38]; see also [Doc. 3-8 at 2 ¶ 5], but that it had since come to understand that the arbitration was to be a "new arbitration," and that the references to the prior award found in Citi defendants' pleadings would therefore be stricken from the record, see [Doc. 3 at 8 ¶ 39 (internal marks omitted)]; see also [Doc. 16 at 5].  Arbitrator Robertson also communicated that, although the panel had reviewed the "Formal Pleadings," it had not read the prior award and was "starting fresh" with the appeal.  [Doc. 3 at 8 ¶¶ 40, 42-43 (emphasis and internal marks omitted); Doc. 3-8 at 2-3 ¶¶ 5, 9, 11]; see also [Doc. 16 at 5].[8]  A new in-person hearing for the appellate arbitration was scheduled for March 5, 2014, see [Doc. 3 at 9 ¶ 50; Doc. 15-1 at 2; Doc. 16 at 5], and, according to Freeman, Arbitrator Robertson also related that the panel was "going to move the arbitration very rapidly" because

---

[8] Specifically, in response to Freeman's question whether "'[t]he panel ha[d] reviewed the Claim and Answer/Counterclaim,'" Arbitrator Robertson replied that "'[t]he panel ha[d] reviewed the formal pleadings,'" including "'the Claim and the Answer & Counterclaim,'" but had "'not reviewed the award,'" and that he in fact had "'no idea what the award [was].'"  See [Doc. 3-8 at 2 ¶ 9 (emphasis omitted), 3 ¶ 11]; see also [Doc. 3 at 8 ¶¶ 40-45].

one of the panel members would soon be "leaving JAMS" and wanted to "wrap up his commitments," <u>see</u> [Doc. 3 at 9 ¶ 49].

Immediately following the conference call, the panel issued a written "Pretrial and Scheduling Order," [Doc. 15-1 at 2], requiring Freeman to submit her discovery requests by February 14, 2014, after which Citi defendants were required to produce the requested discovery by February 21, 2014, [<u>id.</u>; Doc. 3 at 10 ¶ 57(a)-(b); Doc. 16 at 6].  The Order specified that Freeman was "not entitled to repeat discovery that ha[d] already been accomplished," but that she could "request any documents she believe[d] she [was] entitled to that ha[d] not been previously requested." [Doc. 15-1 at 2 (emphasis omitted)]; <u>see also</u> [Doc. 3 at 9 ¶ 54, 10 ¶ 56; Doc. 3-8 at 2 ¶ 7 (Arbitrator Robertson reportedly stating during conference call that, while "discovery would not start over," Freeman "could ask for anything [she] need[e]d that ha[d] not previously been asked for or received"); Doc. 16 at 5-6].  The Order further provided that the parties "must immediately object by email" if there were "any issue related to the requests or the responses[.]"  [Doc. 3 at 10 ¶ 57(c); Doc. 16 at 6]; <u>see also</u> [Doc. 15-1 at 2 (emphasis omitted) ("Any objections to [] Freeman's discovery requests or to Citi[ defendants'] response . . . must be presented immediately to the [] Arbitrator[s] by e-mail.")].  Additionally, the Order struck from the record those portions of Citi defendants' Answer and Counterclaim that

"'discuss[ed] [the] previous arbitration,'" along with Citi defendants' exhibit revealing the prior award.  See [Doc. 15-1 at 2]; see also [Doc. 3 at 8 ¶ 39; Doc. 16 at 5].  The Order also expressly advised the parties that "none of the stricken material ha[d] been read by any of the Arbitrators."  [Doc. 15-1 at 2].  Finally, the Order sustained Freeman's objection to Citi defendants' requests for costs and attorney's fees.  See [id. ("The only fee [] Freeman is required to pay is $250, and that has been paid.")]; see also [Doc. 3 at 7 ¶ 37; Doc. 3-8 at 2 ¶ 6].

###### 2.   *Discovery Dispute*

Freeman served her discovery requests on February 14, 2014, [Doc. 15-3 at 1; Doc. 15-10 at 10-13; Doc. 16 at 6], and Citi defendants served their written responses and objections to the discovery requests, and also produced additional discovery, on February 18, 2014, [Doc. 16 at 6]; see also [Doc. 15-2; Doc. 15-3; Doc. 15-10 at 14-17].  Although Citi defendants initially served their responses and objections by U.S. mail, see [Doc. 15-4 at 2 (e-mail from counsel for Citi defendants stating that the responses and objections to Freeman's discovery requests had been served via mail on February 18, but "inadvertently [were] not also sent via e-mail"); Doc. 16 at 6 (citing [Doc. 15 at 10 ¶ 60]) (Citi defendants "inadvertently failed to e-mail [their] written responses and objections to [Freeman].")], they later e-mailed Freeman their responses and objections, along with the additional discovery, on February 21, 2014,

see [Doc. 15 at 10 ¶ 59; Doc. 15-2 at 2; Doc. 15-4 at 2], and Freeman also separately received the documents that had been mailed to her on February 20, see [Doc. 16 at 6].

Freeman then filed an objection with the panel, see [Doc. 3 at 11 ¶ 66; Doc. 15 at 11 ¶ 66; Doc. 15-5; Doc. 16 at 6], asserting that Citi defendants had failed to comply with the panel's Pretrial and Scheduling Order, and requesting the panel "to delay the hearing" until Citi defendants' "compl[ied] with discovery as stated in the Order," see [Doc. 15-5 at 2-3]; see also [Doc. 3 at 11 ¶ 66(a)-(c)].  Freeman also requested the panel to schedule a telephonic hearing to resolve the parties' discovery dispute, pursuant to JAMS Streamlined Rule 13(c).  See [Doc. 15-5 at 3]; see also [Doc. 3 at 11 ¶ 66(d)].[9]  Citi defendants filed their response to Freeman's objection on February 21, 2014, and a few hours later, Arbitrator Robertson e-mailed counsel for Citi defendants, but not Freeman, to request a copy of Freeman's discovery requests and Citi defendants' written responses and objections.  See [Doc. 15 at 12 ¶ 67; Doc. 15-4 at 2; Doc. 15-6; Doc. 15-10 at 7; Doc. 16 at 6].[10]  Unaware that Freeman

---

[9] JAMS Streamlined Rule 13(c) provides that "[t]he parties shall promptly notify JAMS" when a discovery dispute arises, whereupon "a conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute."  [Doc. 3-5 at 11, Rule 13(c)]; see also [Doc. 3 at 11 ¶ 66(d)].

[10] The entire e-mail from Arbitrator Robertson reads:
Ms Reise: I don't believe I have seen either [] Freeman's discovery request or Citibank's response and objections.  Will you send them to

had not been copied on the e-mail, counsel for Citi defendants "'replied all'" to the panel by e-mail and attached the requested discovery requests and responses. See [Doc. 15-10 at 4-5, 7; Doc. 15 at 14 ¶ 77; Doc. 16 at 6-7].[11]  The panel ruled on the pending discovery motions that same date, sustaining several of Citi defendants' objections to Freeman's discovery requests and denying Freeman's request to delay the hearing, but also ordering Citi defendants to produce certain additional discovery sought by Freeman. See [Doc. 15 at 12 ¶ 69; Doc. 15-7; Doc. 16 at 7].[12]  Citi defendants complied with the panel's Order and produced the additional discovery the next business day, on February 24, 2014. See [Doc. 15 at 12 ¶ 69; Doc. 15-8].

---

this e-mail address, please, and to the other arbitrators.  JR
[Doc. 15-10 at 7].

[11] The entire body of the e-mail from Citi defendants' counsel to the panel states:

> Judge Robertson—Attached is a copy of [] Freeman's requests, which we received via email on last Friday pursuant to the Scheduling Order, and Citibank's responses, which were mailed to [] Freeman . . . on Tuesday and e-mailed this morning.  If you need anything further from us, please let me know.  We appreciate the panel's attention to this matter.  Sarah Reise

[Doc. 15-10 at 7].

[12] As the panel's February 21 Order resolved the parties' pending motions and objections concerning the discovery dispute, the Order did not address Freeman's request for a telephonic hearing.  See generally [Doc. 15-7].

### 3.   *Freeman's Additional Objections of February 24, 2014*

On February 24, 2014, Freeman filed a request for reconsideration of the panel's February 21 discovery Order, together with an objection to the February 21 e-mail correspondence between defendants and the panel in which counsel for Citi defendants had provided the panel with Freeman's discovery requests and Citi defendants' responses, without copying Freeman on the e-mail.  See [Doc. 3 at 12 ¶¶ 72-73, 12-13 ¶ 76; Doc. 15-9].  In her objection, Freeman contended that the e-mail correspondence in question was an *ex parte* communication in violation of JAMS Streamlined Rule 11, see [Doc. 3 at 12 ¶¶ 73-75, 13 ¶ 76(c); Doc. 15-9 at 4], which prohibits parties from having any "*ex parte* communication with the Arbitrator regarding any issue related to the Arbitration," [Doc. 3-5 at 9, Rule 11]; see also [Doc. 3 at 12 ¶ 73].  In their response to Freeman's objections, Citi defendants maintained that the *ex parte* communication was a mere inadvertent error that did not result in any prejudice to Freeman.  See [Doc. 15-10 at 4-5]; see also [Doc. 3 at 13 ¶¶ 77-78].[13] On February 25, 2014, the panel issued an order overruling Freeman's February 24

---

[13] Additionally, Citi defendants represent that upon learning that the *ex parte* communication had occurred, counsel for Citi defendants immediately disclosed the communication to Freeman.  See [Doc. 16 at 7-8 (citation omitted) (Counsel for Citi defendants "immediately . . . disclosed the *ex parte* e-mail exchange, including providing a copy of the communication, to [Freeman]," as soon as counsel "realized that an *ex parte* communication had occurred[.]")]; see also [Doc. 15-10 at 5; Doc. 15-16 at 2].

objections, denying her request for reconsideration, and ordering that the hearing would proceed as scheduled on March 5, 2014.  See [Doc. 3 at 13 ¶ 79; Doc. 3-9 at 2; Doc. 15-11].

### 4.   *Freeman's Request for Disqualification and Motion to Stay*

On February 25, 2014, Freeman filed with JAMS an "Objection to Tainting of the Arbitration and Challenge to Continued Service for Cause," pursuant to JAMS Streamlined Rule 12(j).  See [Doc. 3 at 14 ¶ 82 (emphasis and internal marks omitted); Doc. 15-12].[14] Freeman's motion essentially repeated a number of her prior objections on which the panel had already ruled, see generally [Doc. 15-12], and also "demand[ed] . . . immediate recusal of the [p]anel," and sought to stop the arbitration until a new panel was appointed, [id. at 4; Doc. 3 at 14-15 ¶ 83].  On February 28, 2014, the JAMS Office of General Counsel found that Freeman's objections afforded an "insufficient basis for disqualification," [Doc. 15-16 at 2], and issued a ruling denying Freeman's request to disqualify the arbitration panel, see [Doc. 3 at 18-19 ¶ 89; Doc. 15 at 16 ¶ 89; Doc. 15-16].  The ruling noted that the

---

[14] JAMS Streamlined Rule 12(j) provides that, "[a]t any time during the [a]rbitration process, a [p]arty may challenge the continued service of an [a]rbitrator for cause," provided that the challenge is in writing and is "based upon information that was not available to the [p]arties at the time the [a]rbitrator was selected." [Doc. 3-5 at 10, Rule 12(j)]; see also [Doc. 3 at 14 ¶ 82].  The Rule further provides that "JAMS shall make the final determination as to [a] challenge [for continued service]," by taking into account the "materiality of the facts and any prejudice to the [p]arties."  [Doc. 3-5 at 10, Rule 12(j)]; see also [Doc. 3 at 14 ¶ 82].

"[p]anel [had] confirmed they did not read the prior arbitration award," and further concluded that, "even if the reward had been reviewed[,] the [p]anel [was] capable of proceeding as required."  [Doc. 15-16 at 2].[15]  The ruling also determined that the *ex parte* communication of which Freeman complained was "inadvertently not copied to [Freeman]," and that in any event, Freeman had "receive[d] a full copy of the correspondence," which was "of an administrative nature and did not involve substantive communication."  [Id.][16]

On February 26, 2014, Freeman filed a "Motion to Stay Proceedings to File a Motion to Compel Citi[ defendants] to Arbitrate Per Contractual Terms of the Agreement," [Doc. 3 at 15 ¶ 85 (emphasis and internal marks omitted); Doc. 15-14], in which she alleged that Citi defendants had "failed to arbitrate per the terms of . . . [the] arbitration appeal clause," [Doc. 15-14 at 2]; see also [Doc. 3 at 15 ¶ 85], and therefore sought a stay "to allow [her the] opportunity to ask for a [f]ederal ruling to compel Citi[ defendants] to comply with the [arbitration agreement]," [Doc. 15-14

---

[15] In addition, the ruling addressed Freeman's objections concerning the panel's failure to hold a conference call under JAMS Streamlined Rule 13(c), stating that the panel's decision not to do so was "within the [p]anel's discretion and [was] not evidence of bias."  [Doc. 15-16 at 2].

[16] Freeman filed an objection to JAMS' denial of her motion for disqualification on March 3, 2014.  See [Doc. 3 at 18 ¶ 91; Doc. 15-18].

at 2].  The panel denied Freeman's motion to stay proceedings the following day.
<u>See</u> [Doc. 3 at 18 ¶ 92; Doc. 15 at 17 ¶ 92; Doc. 15-19].[17]

**5.**     ***The Final Hearing***

Freeman failed to appear at the appellate arbitration hearing, which was held
as scheduled on March 5, 2014.  <u>See</u> [Doc. 3-9 at 6; Doc. 15 at 24 ¶ 144; Doc. 16 at 8];
<u>see also</u> [Doc. 25 at 15 (Freeman asserting that she "refused to participate in the
hearing due to all of the corruption and wrongdoing committed by the [p]anel and
by [d]efendants")].   At the hearing, Citi defendants proffered testimony from a
corporate representative and introduced business records concerning Freeman's
credit card account.  <u>See</u> [Doc. 16 at 8-9]; <u>see also</u> [Doc. 3-9 at 4-8; Doc. 15-21 at 3-4].
Additionally, despite Freeman's absence from the hearing, the panel required Citi
defendants to "provide citations to authorities supporting their legal defenses to []
Freeman's claims."  <u>See</u> [Doc. 3-9 at 6-7].   Freeman asserts that Citi defendants
resubmitted their August 30, 2013, Answer and Counterclaim, which included a
reference to the prior arbitration, at the hearing, and that the panel accepted this
submission as evidence.  <u>See</u> [Doc. 3 at 18 ¶ 94].  Citi defendants state, however, that
they did not offer their Answer as evidence, and it is also undisputed that a copy of
the prior award was not presented at the hearing.  <u>See</u> [Doc. 15 at 18 ¶ 95; Doc. 16

---

[17] Freeman subsequently filed an objection to the panel's ruling on March 3,
2014.  <u>See</u> [Doc. 3 at 18 ¶ 93; Doc. 15 at 17 ¶ 93; Doc. 15-20].

at 9]; see also [Doc. 15-21 at 4 (Citi defendants' "List of Exhibits" for the March 5 hearing, listing the Answer and Counterclaim with the specific notation that the copy of the prior award had been "omitt[ed]" per the panel's February 12, 2014, Order)].

In their post-hearing submission filed on March 12, 2014, [Doc. 15-23], Citi defendants renewed their request to recover costs, expenses, and attorney's fees, in addition to the outstanding balance due on Freeman's credit card account, see [Doc. 3 at 18-19 ¶ 96, 19 ¶ 99; Doc. 15-23 at 13].[18]  Although she did not attend the hearing, Freeman was "nevertheless provided with the hearing exhibits, served with [Citi defendants'] post-hearing submission, and given the opportunity to respond," which she did on March 21, 2014.  See [Doc. 3-9 at 6; Doc. 15 at 18 ¶ 95; Doc. 15-22].

**6.   *The Final Award***

The panel issued its final award on March 25, 2014.  See [Doc. 3-9 at 4-9; Doc. 15-24]; see also [Doc. 15 at 31 ¶ 7].  As a preliminary matter, the panel found that Freeman's failure to present any evidence at the hearing was dispositive and required dismissal of her claims.  See [Doc. 3-9 at 6 ("Because [] Freeman had the

---

[18] While the panel had previously sustained Freeman's objection to Citi defendants' requests for costs and attorney's fees in the pretrial Order of February 12, 2014, see [Doc. 15-1 at 2], Citi defendants state that the "renewed request for attorney's fees and costs," made in their post-hearing submission, was based on the subsequent "course of the proceedings, including [Freeman's] voluminous and meritless objections and attempts to delay the proceedings," [Doc. 15 at 19 ¶ 101].

burden of proving her claims, her failure to appear or to present any evidence is dispositive: her claims must be dismissed.")].   The panel also reiterated that, contrary to Freeman's objections that Citi defendants' attachment of the prior award to their pleadings had "tainted" the arbitration, "[n]one of the three arbitrators had read the previous award[.]"   [Doc. 3-9 at 5 & n.1].   Ultimately, the panel's award dismissed all of Freeman's claims and awarded Citi defendants $28,357.54 on their counterclaim, while denying their requests for costs, expenses, and attorney's fees. See [Doc. 3-9 at 8-9]; see also [Doc. 15 at 19 ¶ 100, 31 ¶ 7].

## C.    Proceedings Before the Court

Freeman filed her "Verified Complaint and Petition to Vacate Arbitration Award," [Doc. 1], in this Court on April 28, 2014, and on August 26, 2014, Citi defendants filed an answer and a cross-petition to confirm the award, [Doc. 15], together with an accompanying brief, [Doc. 16].   Freeman has filed a response in opposition to Citi defendants' cross-petition to confirm the award, [Doc. 22], as well as a reply in support of her petition to vacate the award, [Doc. 25].   Citi defendants have also filed a motion for judgment on the pleadings, [Doc. 17], while defendant Ballard Spahr moves to dismiss Freeman's claims against it for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, [Doc. 18]. Freeman has not responded to the motion for judgment on the pleadings or the

motion to dismiss.[19]   On September 26, 2014, Freeman filed a motion to compel arbitration and stay proceedings pending arbitration, [Doc. 26], and she filed a "Motion to Extend Time to Respond to Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings," [Doc. 28], on October 9, 2014.   Defendants have filed responses to both of these motions, [Docs. 29 & 30], to which Freeman has filed replies, [Docs. 31 & 33].   Most recently, defendants filed a motion for leave to file a surreply to Freeman's reply brief in support of her motion to compel arbitration, [Doc. 34], which Freeman opposes, [Doc. 35].

## II. DISCUSSION

The Court will first consider Freeman's motion to compel arbitration and stay proceedings pending arbitration, [Doc. 26], followed by her petition to vacate the arbitration award, [Doc. 3], and Citi defendants' cross-petition to confirm the award, [Doc. 15].   The Court will then turn to Ballard Spahr's motion to dismiss, [Doc. 18], and Citi defendants' motion for judgment on the pleadings, [Doc. 17], along with Freeman's request for an extension to respond to those motions, [Doc. 28].

---

[19] A motion to which no response is filed is deemed unopposed.   See LR 7.1B, NDGA.

A.      **Freeman's Motion to Compel Arbitration and Stay Proceedings Pending Arbitration, [Doc. 26]**

Although Freeman initiated the instant action and no claims have been filed against her, she now asserts that arbitration of her claims is required because the parties have a valid and enforceable agreement to arbitrate, and her claims "fall squarely within [the] [] scope of [that] agreement."  [Doc. 26 at 3]; see also [Doc. 33 at 6].  Yet, rather than seeking to dismiss her claims in the pending action and proceed to arbitration, Freeman wants both to arbitrate her claims and to simultaneously keep them alive in this Court, even while arguing that the claims do not belong here because they are subject to the parties' agreement to arbitrate. Freeman cannot have it both ways, and her motion to compel arbitration fails for several reasons.[20]

---

[20] Defendants have also filed a motion for leave to file a surreply to Freeman's reply brief in support of her motion to compel arbitration, [Doc. 34], which Freeman opposes, [Doc. 35].  "Neither the Federal Rules nor the Court's Local Rules allow sur-reply briefs as a matter of right, and the Court normally does not permit sur-replies."  USMoney Source, Inc. v. Am. Int'l Specialty Lines Ins. Co., No. 1:07-cv-0682-WSD, 2008 WL 160709, at *2 n.5 (N.D. Ga. Jan. 15, 2008), rev'd on other grounds, 288 F. App'x 558 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted); see also Leatherwood v. Anna's Linens Co., 384 F. App'x 853, 857 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted).  "Although the Court may in its discretion permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief."  Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005) (citations omitted); see also St. James Entm't LLC v. Dash Crofts, Civil Action No. 1:09-CV-1975-RWS, 2010 WL 2802616, at *1 (N.D. Ga. July 13, 2010) ("Certainly, the

To begin with, under § 4 of the Federal Arbitration Act ("FAA"), "only a 'party aggrieved' by the alleged 'failure, neglect or refusal of another to arbitrate' may petition for an order compelling arbitration." Evans & Sutherland Computer Corp. v. Thomson Training & Simulation Ltd., No. 94 CIV. 6795 (JFK), 1994 WL 593808, at *4 (S.D.N.Y. Oct. 28, 1994) (quoting 9 U.S.C. § 4); see also Am. Gen. Fin. Servs. of Ala., Inc. v. Witherspoon, 426 F. App'x 781, 782 (11th Cir. 2011) (per curiam) (unpublished) (citing 9 U.S.C. § 4); Regal Lager, Inc. v. The Baby Club on Am., Inc., No. 1:06 CV 0962 JEC, 2006 WL 3388435, at *2 (N.D. Ga. Nov. 21, 2006).

---

Court is disinclined to consider arguments raised in a surreply which could have been raised in an earlier filing."). Defendants argue that their surreply is warranted in this case to address new factual allegations made by Freeman in her reply brief concerning her most recent attempt to pursue arbitration. See [Doc. 34 at 1; Doc. 34-2 at 1-3]. In particular, defendants seek to address Freeman's allegations that she "has already initiated arbitration with JAMS for her claims in this matter against [d]efendants," and that "JAMS has already accepted the case," but is "awaiting [d]efendants' payment of their portion of the fees to proceed[.]" [Doc. 33 at 9 (citations omitted)]; see also [Doc. 33-1 at 2]. In their proposed surreply, defendants point out that, while Freeman may have paid the JAMS arbitration fees, defendants have also notified JAMS that they are first awaiting the Court's resolution of Freeman's motion to compel before they respond to Freeman's demand for arbitration. See [Doc. 34-2 at 2, 7]. In her response in opposition to defendants' motion for leave to file a surreply, Freeman briefly argues in support of her motion to compel arbitration, but she does not address any of the arguments made by defendants as to why they believe a surreply is appropriate in this case, nor does she otherwise dispute that the new allegations raised in her reply in support of her motion to compel arbitration provide a valid reason for additional briefing on the part of defendants. See generally [Doc. 35]. Accordingly, for good cause shown, defendants' motion for leave to file a surreply, [Doc. 34], is **GRANTED**, and the Clerk is **DIRECTED** to enter defendants' surreply, [Doc. 34-2], on the docket.

"A party is not aggrieved under Section 4 unless the adverse party has refused to arbitrate in the chosen forum."   Evans & Sutherland Computer Corp., 1994 WL 593808, at *4 (collecting cases); see also Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 725 F.2d 192, 195 (2d Cir. 1984) (noting that "[u]nless [a party] commences litigation or is ordered to arbitrate . . . and fails to do so, it is not in default of any arbitration agreement," and arbitration therefore "cannot be compelled under Section 4"); Dr. Pepper Bottling Co. of Tex. v. Presidential Life Ins. Co., No. CA 3:01-CV-2168-R, 2002 WL 628658, at *3 (N.D. Tex. Apr. 16, 2002) (quoting 9 U.S.C. § 4) (emphasizing that "[t]he remedies afforded by Section 4 of the FAA are available only to a 'party aggrieved by the alleged *failure . . . of another to arbitrate*'").   As noted earlier, the only claims that were ever filed in this action are those asserted by Freeman in her complaint, and Freeman does not allege that defendants have failed or refused to arbitrate in the chosen forum. See [Docs. 26, 33, & 35].[21]   Accordingly, because none of the defendants in this action have commenced

---

[21] As mentioned above, Freeman represents that she has filed a demand for new arbitration proceedings with JAMS and is awaiting defendants' payment of their JAMS fees, see [Doc. 26 at 3, 17-21; Doc. 33 at 9; Doc. 33-1], but nowhere does she allege that defendants have failed or refused to arbitrate, see generally [Docs. 26, 33, & 35], as the statute requires, see 9 U.S.C. § 4.   Moreover, defendants have submitted with their proposed surreply a copy of a letter which they sent to JAMS pertaining to Freeman's most recent demand for arbitration, in which they merely indicate that they are "awaiting the Court's decision [on Freeman's motion to compel] before responding" to the demand, and there is no indication from the letter or any other evidence of record that defendants have "fail[ed], neglect[ed], or

litigation against Freeman or otherwise refused to comply with an order to arbitrate, Freeman is not a "party aggrieved by the alleged failure . . . of another to arbitrate" within the meaning of § 4 of the FAA, and her motion to compel arbitration is without merit.  See 9 U.S.C. § 4; Downing, 725 F.2d at 195.

Freeman's motion to compel also fails because she has waived her right to arbitrate these claims by electing to assert them in this Court to the exclusion of arbitration.  "Although arbitration agreements governed by the FAA are to be liberally enforced, courts will not compel arbitration when the party who seeks to arbitrate has waived its right to do so."  Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1200 (11th Cir. 2011) (footnote and citations omitted) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); see also id. (quoting Burton-Dixie Corp. v. Timothy McCarthy Constr. Co., 436 F.2d 405, 407 (5th Cir. 1971)[22]) (noting that an arbitration agreement may be waived "just like any other contract); In re Checking Account Overdraft Litig., 829 F. Supp. 2d 1316, 1322 (S.D. Fla. 2011), aff'd sub nom. Garcia v. Wachovia Corp., 699 F.3d 1273 (11th Cir. 2012)

---

refus[ed] to arbitrate," within the meaning of § 4 of the FAA.  See [Doc. 34-2 at 7; 9 U.S.C. § 4]; see also Painewebber, Inc. v. Faragalli, 61 F.3d 1063, 1066 (3d Cir. 1995) ("[A]n action to compel arbitration under the [FAA] accrues only when the respondent unequivocally refuses to arbitrate[.]").

[22] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

(quoting S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990)) ("It is well established that a 'party may, by its conduct, waive its right to arbitration.'").  The Eleventh Circuit employs a two-part test to determine whether a party has waived its contractual right to arbitrate.  See Garcia, 699 F.3d at 1277.  First, the Court must "decide if, 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right[.]'"  Krinsk, 654 F.3d at 1200 (footnote, citation, and internal marks omitted) (quoting Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315 (11th Cir. 2002)).  "A party acts inconsistently with the arbitration right when the party 'substantially invokes the litigation machinery prior to demanding arbitration.'"  Garcia, 699 F.3d at 1277 (citation omitted).  Second, the Court "look[s] to see whether, by [acting inconsistently with the arbitration right], that party has in some way prejudiced the other party."  Id. (second alteration in original) (citation and internal marks omitted).  In determining whether the other party has been prejudiced, the Court "may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process."  Id. (citation and internal marks omitted).

Even though Freeman maintains that arbitration of her claims "is required" pursuant to the arbitration agreement, [Doc. 26 at 2], she nevertheless deliberately elected to pursue those claims in this Court.  Freeman has filed numerous motions

in these proceedings in addition to her complaint and petition to vacate the award, see [Docs. 1, 3, 13, 20, 21, 28, & 26], and the litigation she initiated has now been pending for more than eight months. Moreover, the claims on which Freeman seeks to compel arbitration are the very claims that she has asserted in the pending lawsuit. See [Doc. 26 at 1 (seeking an "Order compelling . . . arbitration . . . for [Freeman's] claims in this action against [defendants]"), 17 (Freeman's pending demand for arbitration before JAMS , identifying her claims against defendants as "[c]onsumer claim for breach of contract and FDCPA")]. By "'substantially invok[ing] the litigation machinery prior to demanding arbitration,'" Garcia, 699 F.3d at 1277 (citation omitted), Freeman has acted inconsistently with the right to arbitrate those claims, and has plainly "'manifest[ed] an intent to avoid or to waive arbitration,'" Barkwell v. Sprint Commc'ns Co., L.P., No. 4:09-CV-56 (CDL), 2012 WL 112545, at *3 (M.D. Ga. Jan. 12, 2012) (quoting Citibank, N.A. v. Stok & Assocs., P.A., 387 F. App'x 921, 924 (11th Cir. 2010) (per curiam) (unpublished)); see also Sharif v. Wellness Int'l Network, Ltd., 376 F.3d 720, 726 (7th Cir. 2004) (citing Ernst & Young LLP v. Baker O'Neal Holdings, Inc., 304 F.3d 753, 757 (7th Cir. 2002)) (noting that "a party that chooses a judicial forum for the resolution of a dispute is presumed to have waived its right to arbitrate"); Hiotakis v. Celebrity Cruises Inc., No. 10-22954-CIV, 2011 WL 2148978, at *8 (S.D. Fla. May 31, 2011) (citations omitted)

("Substantial participation in litigation is enough to satisfy the first prong of waiver.").

The Court also finds that to compel arbitration at this stage of the litigation would prejudice defendants in light of the significant expenses which defendants have already incurred in conducting the earlier arbitration, see [Doc. 3-9 at 8; Doc. 15-23 at 5 & n.3 (noting defendants' arbitration expenses of more than $30,000.00)], and the substantial delay between Freeman's commencement of this action and her subsequent motion to compel.  See Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg), 62 F.3d 1356, 1366 (11th Cir. 1995) (citing E.C. Ernst, Inc. v. Manhattan Constr. Co. of Tex., 559 F.2d 268, 269 (5th Cir. 1977) (per curiam)) ("Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate."); Sharif, 376 F.3d at 726 (citations omitted) (noting that "[a]lthough several factors may be considered in determining waiver, diligence or the lack thereof should weigh heavily in the decision—'did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?'").  The Court thus "finds that [Freeman's] arbitration motion is untimely, and [Freeman] knowingly and voluntarily waived [her] right to demand arbitration" of her pending claims, see

25

In re Checking Account Overdraft Litig., 829 F. Supp. 2d at 1322 (footnote omitted).[23]

Since Freeman's motion to compel arbitration is without merit, her request to stay proceedings pending arbitration is also due to be denied.[24] Accordingly, it is **RECOMMENDED** that Freeman's Motion to Compel Arbitration and Stay Proceedings Pending Arbitration, [Doc. 26], be **DENIED**.

**B.      Freeman's Petition to Vacate Arbitration Award, [Doc. 3], and Citi Defendants' Cross-Petition to Confirm Arbitration Award, [Doc. 15]**

The FAA "'imposes a heavy presumption in favor of confirming arbitration awards,' and 'federal courts should defer to an arbitrator's decision whenever possible.'" Pochat v. Lynch, No. 12-22397-CIV, 2013 WL 4496548, at *5 (S.D. Fla. Aug. 22, 2013) (quoting Riccard v. Prudential Ins. Co. of Am., 307 F.3d 1277, 1288

---

[23] As discussed in greater detail below, see discussion, infra at 81 n.43, Freeman's motion to compel is also due to be denied because the claims which Freeman seeks to compel to arbitration represent a collateral attack on the award itself.

[24] Freeman's motion to stay proceedings pending arbitration also fails because Freeman has waived her right to arbitrate. Under § 3 of the FAA, only a party who is "not in default in proceeding with [] arbitration" may apply for a stay of proceedings pending arbitration, see 9 U.S.C. § 3, and "'[d]efault' for the purpose of § 3 is generally treated as synonymous with having waived the right to arbitrate by actively litigating the case in court," Sarl v. A.M. Todd Co., Civil Action No. 07-2727, 2008 WL 724607, at *12 n.14 (E.D. Pa. Mar. 18, 2008) (citing Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 217-18 (3d Cir. 2007)). Accordingly, since Freeman has waived her right to arbitrate, she is a party "in default" within the meaning of § 3 of the FAA, and her motion to stay proceedings pending arbitration is due to be denied for this additional reason.

(11th Cir. 2002); <u>Frazier v. CitiFinancial Corp., LLC</u>, 604 F.3d 1313, 1321 (11th Cir. 2010)); <u>see also</u> <u>Ruggiero v. Richert</u>, No. 10-23539-CIV, 2011 WL 2910066, at *1 (S.D. Fla. July 18, 2011) (citing <u>Lifecare Int'l, Inc. v. CD Med., Inc.</u>, 68 F.3d 429, 433 (11th Cir. 1995)).  Thus, "[a] court's ability to review an arbitration panel's conclusions is extremely limited," <u>S. Mills, Inc. v. Nunes</u>, Civil Action No. 1:10-CV-3340-RWS, 2013 WL 1340385, at *1 (N.D. Ga. Mar. 29, 2013), <u>aff'd</u>, 586 F. App'x 702 (11th Cir. 2014) (per curiam) (unpublished), and "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his position," <u>Pochat</u>, 2013 WL 4496548, at *5 (alteration omitted) (quoting <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 38 (1987)).[25]  Indeed, "[b]ecause

---

[25] <u>See also</u> <u>Cat Charter, LLC v. Schurtenberger</u>, 646 F.3d 836, 843 (11th Cir. 2011) (citation omitted) (noting that arbitrators "'do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party'"); <u>Booth v. Hume Publ'g, Inc.</u>, 902 F.2d 925, 932 (11th Cir. 1990) (alteration in original) (quoting <u>Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.</u>, 274 F.2d 805, 808 (2d Cir. 1960)) ("'[T]he court's function in confirming or vacating an arbitration award is severely limited.  It if were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated.'"); <u>Pochat</u>, 2013 WL 4496548, at *6 (citations omitted) (quoting <u>Davis v. Prudential Sec., Inc.</u>, 59 F.3d 1186, 1190 (11th Cir. 1995)) ("[I]t is [] 'well settled that judicial review of an arbitration award is narrowly limited.'"); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Smolchek</u>, No. 12-80355-CIV, 2012 WL 4056092, at *5 (S.D. Fla. Sept. 17, 2012) (citations omitted) ("[T]he Court's review of the panel's actions is necessarily a limited one."); <u>Ruggiero</u>, 2011 WL 2910066, at *1 (citing <u>Osram Sylvania, Inc. v. Teamsters Local Union</u>, 87 F.3d 1261, 1263 (11th Cir. 1996)) ("Judicial review of arbitration awards must be conducted with considerable deference."); <u>Marshall &</u>

arbitration is an alternative to litigation, judicial review of arbitration decisions is 'among the narrowest known to the law,'" <u>Butterworth v. Morgan Keegan & Co.</u>, No. 2:12-CV-00337-TMP, 2012 WL 4732886, at *3 (N.D. Ala. Sept. 28, 2012) (internal marks omitted) (<u>quoting</u> <u>AIG Baker Sterling Heights, LLC v. Am. Multi–Cinema, Inc.</u>, 508 F.3d 995, 1001 (11th Cir. 2007)), and the Eleventh Circuit has therefore "described courts' confirmations of arbitration awards as 'usually routine or summary,'" <u>Pochat</u>, 2013 WL 4496548, at *5 (<u>quoting</u> <u>Riccard</u>, 307 F.3d at 1288). Accordingly, "'[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high.'" <u>Scurtu v. Hospitality & Catering Mgmt. Servs.</u>, Civil Action No. 07–0410–WS–B, 2012 WL 4061759, at *4 (S.D. Ala. Sept. 13, 2012) (alteration in original) (<u>quoting</u> <u>STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC</u>, 648 F.3d 68, 74 (2d Cir. 2011)).

A "federal district court can vacate an arbitration award . . . only in extremely narrow circumstances.'" <u>Butterworth</u>, 2012 WL 4732886, at *3 (<u>quoting</u> <u>Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc.</u>, 146 F.3d 1309, 1311 (11th

---

<u>Co. v. Duke</u>, 941 F. Supp. 1207, 1210 (N.D. Ga. 1995), <u>aff'd</u>, 114 F.3d 188 (11th Cir. 1997) (per curiam) (<u>quoting</u> <u>Robbins v. Day</u>, 954 F.2d 679, 682 (11th Cir. 1992), <u>overruled in part on other grounds</u>, <u>First Options of Chi., Inc. v. Kaplan</u>, 514 U.S. 938 (1995)) ("The [FAA] does not allow courts to 'roam unbridled' in their oversight of arbitration awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specified ways.'").

Cir. 1998)).   In particular, "[a] district court 'may' (not 'must' . . .) vacate an arbitrator's award under only four limited scenarios prescribed by statute," <u>Scurtu</u>, 2012 WL 4061759, at *3 (parentheses in original):

> (1) Where the award was procured by fraud, corruption, or undue means;
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party may have been prejudiced; or
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C. § 10(a)(1)-(4).  These four narrow statutory grounds provide the exclusive means by which a district court may vacate an arbitration panel's award.  <u>See Schurtenberger</u>, 646 F.3d at 842 n.10 (citation omitted) ("The Supreme Court has made clear that the statutory grounds justifying vacatur found in 9 U.S.C. § 10(a) are exclusive."); <u>Nunes</u>, 2013 WL 1340385, at *1 (citations omitted) (quoting <u>White Springs Agric. Chems., Inc. v. Glawson Invs. Corp.</u>, 660 F.3d 1277, 1280 (11th Cir. 2011)) ("In the Eleventh Circuit, Sections 10 and 11 of the [FAA] 'provide the exclusive means by which a federal court may upset an arbitration panel's award.'"); <u>Smolchek</u>, 2012 WL 4056092, at *1 (alteration in original) (quoting <u>Lifecare Int'l, Inc.</u>,

68 F.3d at 433)) (noting that the FAA enumerates only "'four narrow bases for vacating [an] arbitration award'"); <u>Ruggiero</u>, 2011 WL 2910066, at *1 (citations omitted) ("An arbitration award can only be overturned if it violates one of the narrow statutory grounds set forth in the [FAA]"). "[D]isagreement on the merits of any of the panel's decisions is not a reason to vacate its award," <u>Citigroup Global Mkts., Inc. v. Bock</u>, No. 10-24157-MC, 2013 WL 210253, at *3 (S.D. Fla. Jan. 17, 2013), nor is "'[a] panel's incorrect legal conclusion . . . grounds for vacating . . . the award,'" <u>Nunes</u>, 2013 WL 1340385, at *1 (citation omitted) (<u>quoting</u> <u>Glawson Invs. Corp.</u>, 660 F.3d at 1280). Similarly, an arbitration "[p]anel's factual findings are not open to judicial challenge." <u>Id.</u> (citation omitted) (<u>citing</u> <u>Westerbeke Corp. v. Daihatsu Motor Co.</u>, 304 F.3d 200, 214 (2d Cir. 2002)); <u>see also</u> <u>Scurtu</u>, 2012 WL 4061759, at *4 (<u>quoting</u> <u>InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG</u>, 373 F. Supp. 2d 340, 349 (S.D.N.Y. 2005)) ("'A mistake of law, a clear error in factfinding, or a failure to understand or apply law appropriately is insufficient to justify disturbing an arbitration award.'"); <u>Pac. Breakwater W., Inc. v. Wellness Int'l Network, Ltd.</u>, No. Civ.A. 3:97-CV1556, 2000 WL 276812, at *2 (N.D. Tex. Mar. 9, 2000) (citation and internal marks omitted) (<u>citing</u> <u>Gingiss Int'l, Inc. v. Bormet</u>, 58 F.3d 328, 333 (7th Cir. 1995)) ("Factual or legal errors by arbitrators-even clear or gross errors-do not authorize courts to annul awards.").

Additionally, "[s]ection 9 of the FAA provides that, upon application of any party to the arbitration, the court must confirm the arbitrator's award unless it is vacated, modified, or corrected in accordance with sections 10 and 11 of the statute." Pochat, 2013 WL 4496548, at *6 (internal marks omitted) (citing Frazier, 604 F.3d at 1321); see also U.S. ex rel. Postel Indus., Inc. v. Travelers Cas. & Sur. Co. of Am., No. 6:12-CV-1228-Orl-37-DAB, 2014 WL 3594306, at *1 (M.D. Fla. July 18, 2014) (alterations in original) (internal marks omitted) (citing Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 587 (2008); 9 U.S.C. § 9) ("The [FAA] provides that, [o]n application for an order confirming [an] arbitration award, the court 'must grant' the order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.  There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies[].'").  In other words, "[w]here a movant 'has failed to demonstrate the existence of any of the statutory grounds for vacating or modifying the arbitrator's award, the district court [is] bound by § 9 to confirm the award.'"  Scurtu, 2012 WL 4061759, at *3 (second alteration in original) (quoting Frazier, 604 F.3d at 1323-24).  Finally, "[i]n applying these grounds for vacating . . . an award, the Eleventh Circuit has cautioned, courts 'must always bear in mind that the basic policy of conducting arbitration proceedings is to offer a means of

deciding disputes expeditiously and with lower costs than in ordinary litigation.'" Pochat, 2013 WL 4496548, at *7 (citing Schmidt v. Finberg, 942 F.2d 1571, 1573 (11th Cir. 1991); Booth, 902 F.2d at 933).

Freeman seeks to vacate the arbitration panel's final award under each of the four statutory bases for vacatur enumerated in § 10 of the FAA. See [Doc. 3 at 26-27 ¶¶ 140-45; Doc. 25 at 2-10]. In particular, Freeman asserts that the award "was procured by corruption and [] undue means," [Doc. 3 at 26 ¶ 142]; see also [Doc. 25 at 4-5]; that the panel was "corrupt" and acted with "evident partiality" and "exceeded [its] powers," see [Doc. 3 at 26-27 ¶ 143]; see also [Doc. 25 at 5-7, 9-10]; and that the panel was "guilty of misconduct" by refusing to postpone the hearing and to hear relevant evidence, and by engaging in various other acts of "misbehavior" which resulted in prejudice to Freeman's rights, see [Doc. 3 at 26-27 ¶¶ 143-44]; see also [Doc. 25 at 8-9]. Citi defendants argue that Freeman has "fail[ed] to satisfy the heavy burden required to vacate an arbitration award under the [FAA]," and that the arbitration award in this case must therefore be confirmed. [Doc. 16 at 2].[26]

---

[26] As a threshold matter, Citi defendants also argue that Freeman has "waived her right to petition the Court to vacate the final arbitration award because she failed to appear at the [March 5, 2014,] hearing." See [Doc. 16 at 9-11 (emphasis omitted)]. None of the cases cited by Citi defendants in support of this argument, however, hold that a party's failure to appear at an arbitration hearing constitutes a waiver of that party's right to later seek to vacate the arbitration award in court. See [id. at 10

### 1.    9 U.S.C. § 10(a)(1)

Freeman asserts that the final award was procured by corruption, fraud, and undue means under § 10(a)(1) of the FAA because: (1) defendants exposed the panel to the prior award and mentioned the previous arbitration; (2) the panel initially believed that the appeal was "just a review of the previous arbitration"; (3) the panel allegedly provided conflicting statements about whether it had read the copy of the prior award attached by Citi defendants to their pleadings; and (4) the panel "rapidly mov[ed] the arbitration forward due to one member['s] retirement," such that the "arbitration consisted of three weeks" from the initial conference call to the date of the hearing. See [Doc. 25 at 4-5 (citations omitted)].  To prove that the award was "procured by corruption, fraud, or undue means" under § 10(a)(1), Freeman "'must establish the fraud by clear and convincing evidence . . ., the fraud must not have been discoverable upon the exercise of due diligence prior to or during the

---

(citations omitted)].  Instead, § 9 of the FAA provides simply that a district court may entertain a petition to vacate an arbitration award "upon the application of any party to the arbitration," 9 U.S.C. § 9, nor has the Court located any authority for the proposition that a party is barred from seeking vacatur of an award because it did not appear at a hearing scheduled in connection with the underlying arbitration. Nevertheless, while this particular argument of Citi defendants lacks merit, Freeman's failure to appear at the appellate arbitration hearing is still relevant to the Court's resolution of the pending motions to vacate and confirm the award, since the arbitration panel's final award expressly relied on Freeman's failure to appear at the hearing as an independent ground in support of its decision. See [Doc. 3-9 at 6].

arbitration . . ., [and Freeman] must demonstrate that the fraud materially related to an issue in the arbitration.'"   <u>See</u> <u>Dorward v. Macy's Inc.</u>, No. 2:10-cv-669-FTM-29DNF, 2013 WL 5407660, at *2 (M.D. Fla. Sept. 25, 2013) <u>aff'd</u>, No. 13-14783, 2014 WL 5334739 (11th Cir. Oct. 21, 2014) (per curiam) (unpublished) (alterations in original) (<u>quoting</u> <u>Bonar v. Dean Witter Reynolds, Inc.</u>, 835 F.2d 1378, 1383 (11th Cir. 1988)).  Citi defendants argue that Freeman's attempt to vacate the award under § 10(a)(1) fails as a matter of law because Freeman has not established fraud, corruption, or undue means by clear and convincing evidence, and because the misconduct alleged by Freeman was also discoverable during the arbitration proceedings.  <u>See</u> [Doc. 16 at 12-16].  The Court agrees.

First, none of the alleged misconduct identified by Freeman amounts to fraud, corruption, or undue means within the meaning of § 10(a)(1).  Although Freeman asserts that the panel engaged in "deceit" by providing inconsistent statements about whether it had read the award of the first arbitration, <u>see</u> [Doc. 25 at 4]; <u>see also</u> [Doc. 3 at 8 ¶¶ 41-46], the panel repeatedly and unambiguously confirmed throughout the appellate proceedings that it never read the previous award.  During the conference call of February 12, 2014, Arbitrator Robertson clearly stated that, while the panel had reviewed the parties' pleadings, it was "starting fresh" on the appeal and had "'not reviewed the award.'"  <u>See</u> [Doc. 3-8 at 2-3 ¶¶ 5, 9, 11]; <u>see also</u>

[Doc. 16 at 5]; see also [Doc. 3 at 8 ¶¶ 40-45]. Later that month, the JAMS Office of General Counsel notified Freeman that the "[p]anel [had] confirmed they did not read the prior arbitration award," adding that, even if the panel had reviewed the award, the panel was nevertheless "capable of proceeding as required." [Doc. 15-16 at 2]. And in its final award on the merits, the panel once again reassured Freeman that "[n]one of the three arbitrators had read the previous award[.]" [Doc. 3-9 at 5 & n.1].[27]

Similarly, Freeman's bare allegation that the panel originally thought the appeal was to be a "review of the previous arbitration," [Doc. 25 at 4 (citation omitted)]; see also [Doc. 3 at 7 ¶ 38], rather than a "new" arbitration, provides no support at all for a finding of fraud or corruption. Furthermore, regardless of the panel's initial understanding of the nature of the appeal, Freeman admits that Arbitrator Robertson clearly communicated to the parties during the preliminary conference call that the panel would treat the appeal as a "new arbitration" and not a review of the prior award. See [Doc. 3 at 8 ¶ 39 (internal marks omitted)].[28] As for

---

[27] Moreover, the Court notes that the arbitration agreement's appeal clause provides simply that the appeal is to be a "new arbitration" in which the panel considers "all factual and legal issues anew," see [Doc. 3-1 at 6], and nothing in the parties' agreement to arbitrate prohibits the panel from reviewing the prior award, see generally [Doc. 3-1].

[28] Along the same lines, Freeman argues that the award was procured by corruption because Citi defendants at first "wrong[ly]" interpreted the arbitration

the timeline of the proceedings, the panel did not issue its final award until March 25, 2014, see [Doc. 3-9 at 4-9; Doc. 15 at 31 ¶ 7; Doc. 15-24], nearly a year and a half after Freeman initially commenced arbitration proceedings with JAMS in October of 2012, see [Doc. 3 at 3 ¶ 10; Doc. 3-6 at 8].  During that time, the parties engaged in extensive discovery, a thorough appeal was conducted by a neutral and qualified panel even after the initial award was made, and even though Freeman failed to appear at the final in-person hearing, she was given copies of the hearing exhibits and defendants' post-hearing submission, and was allowed to submit a post-hearing brief, which the panel took into consideration in issuing the final award.  See [Doc. 3-9 at 6].  The record thus reveals that Freeman was afforded a meaningful opportunity to present her claims and address the counterclaims brought against her by Citi defendants, and Freeman's allegation that the arbitration was nevertheless conducted in an "extreme rush" that "prejudiced [her] right to due process," [Doc. 3 at 9 ¶ 51], finds no support in the record and does not justify vacatur of the award.

Equally meritless is Freeman's conclusory assertion that defendants' mere "exposure of the [prior] award to the [p]anel," [Doc. 25 at 4 (citation omitted)],

---

agreement's appeal clause to provide for appellate review of the prior award, instead of a "new" arbitration.  See [Doc. 25 at 4]; see also [Doc. 3 at 7 ¶ 38; Doc. 3-8 at 2 ¶ 5].  Freeman has made no effort to explain how defendants' interpretation of the appeal clause constitutes corruption requiring vacatur of the award, and this argument is likewise without merit.

somehow amounted to fraud, corruption, or undue means.  See Dorward, 2013 WL 5407660, at *2 (finding "[p]laintiff's conclusory allegation" of fraudulent conduct insufficient to prove fraud by clear and convincing evidence).  Indeed, "[u]ndue means, warranting a vacatur of award, include measures equal in gravity to bribery . . . or physical threat to an arbitrator," and "'no court has ever suggested that the term 'undue means' should be interpreted to apply to the submission of evidence that is merely legally objectionable.'"  Liberty Sec. Corp. v. Fetcho, 114 F. Supp. 2d 1319, 1321-22 (S.D. Fla. 2000) (quoting Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 52 F.3d 359, 362 (D.C. Cir. 1995)).[29]  Accordingly, Freeman's allegations

---

[29] Citi defendants also argue that Freeman has failed to prove that the award was obtained by "undue means" because she has not shown that defendants acted in bad faith during the arbitration proceedings.  See [Doc. 16 at 15 n.3].  "'Undue means' requires 'nefarious intent or bad faith, or conduct that is immoral, if not illegal.'"  Washington v. William Morris Endeavor Entm't, LLC, No. 10-cv-9647 PKC, 2014 WL 4401291, at *10 (S.D.N.Y. Sept. 5, 2014) (quoting ARMA, S.R.O. v. BAE Sys. Overseas, Inc., 961 F. Supp. 2d 245, 254 (D.D.C. 2013)); see also Pontiac Trail Med. Clinic, P.C. v. PaineWebber, Inc., No. 9201972, 1993 WL 288301, at *4 (6th Cir. July 29, 1993) (per curiam) (unpublished) (citation omitted) ("Courts have interpreted the 'undue means' language of the Act as requiring some type of bad faith behavior by the winning party."); Barcume v. City of Flint, 132 F. Supp. 2d 549, 556 (E.D. Mich. 2001) (alteration in original) (citation omitted) ("'[M]ere sloppy or overzealous lawyering' does not constitute 'undue means.'"); Fetcho, 114 F. Supp. 2d at 1321 ("The term 'undue means' must be read in conjunction with the words 'fraud' and 'corruption' and thus requires proof of intentional misconduct.").  Here, defendants have consistently represented that any mistakes they may have made in the arbitration proceedings were the result of mere inadvertence, and there is not the slightest hint in the record that defendants acted illegally, immorally, or with nefarious intent at any point in the arbitration.  See [Doc. 15 at 10 ¶ 60; Doc. 15-4 at 2; Doc. 16 at 6 (inadvertently failing to e-mail responses and objections to Freeman's

fall short of demonstrating fraud, corruption, or undue means by clear and convincing evidence, and vacatur is therefore not warranted under 9 U.S.C. § 10(a)(1).

Freeman's petition to vacate the award under § 10(a)(1) also fails because she has not shown that the alleged fraud or corruption was "not . . . discoverable upon the exercise of due diligence prior to or during the arbitration[.]" See Dorward, 2013 WL 5407660, at *2 (citation and internal marks omitted).  On the contrary, Freeman was not only aware of the alleged misconduct during the underlying arbitration, but she also repeatedly brought it to the attention of the panel and challenged it through numerous objections.  See [Doc. 3 at 6 ¶ 25, 7 ¶ 32; Doc. 16 at 4-5 (objecting to defendants' references to the prior award); Doc. 3 at 11 ¶ 66; Doc. 15 at 11 ¶ 66; Doc.

---

discovery requests, instead serving the documents by mail); Doc. 15-10 at 4-5 (failure to copy Freeman on e-mail to panel was mere inadvertent error)].  Indeed, defendants candidly admitted, and promptly remedied, any oversights made during the proceedings.  See [Doc. 15 at 10 ¶ 59; Doc. 15-2 at 2; Doc. 15-4 at 2 (e-mailing Freeman the discovery responses and objections after initially serving by mail); Doc. 15-10 at 5; Doc. 15-16 at 2; Doc. 16 at 7-8 (citation omitted) (immediately disclosing *ex parte* e-mail exchange to Freeman upon learning that Freeman had not been copied on the e-mails)].  Thus, Freeman's argument that defendants procured the award by undue means also fails because Freeman has not shown that any acts or omissions on the part of defendants in the course of the arbitration were deliberately undertaken in bad faith.  See Barcume, 132 F. Supp. 2d at 556 (finding that party failed to establish undue means by clear and convincing evidence where, even though opposing counsel "behaved unprofessionally by engaging in *ex parte* communications with an Arbitrator," counsel's behavior nonetheless did not rise "to the level of being illegal, immoral, or in bad faith").

38

15-5; Doc. 16 at 6 (objecting to defendants' alleged failure to comply with discovery);

Doc. 3 at 12 ¶¶ 73-75, 13 ¶ 76(c); Doc. 15-9 at 4 (objecting to *ex parte* communication);

Doc. 3 at 14 ¶ 82; Doc. 15-12 (objecting to "taint[ing]" of the arbitration due to

panel's alleged misconduct); Doc. 3 at 15 ¶ 85; Doc. 15-14 (challenging defendants'

purported failure to arbitrate according to the terms of the parties' agreement)].

Because Freeman has not pointed to any "newly discovered" fraud or corruption

that she learned of only after the arbitration was completed, she has failed to carry

her burden of establishing that vacatur is warranted under § 10(a)(1).  See Fetcho,

114 F. Supp. 2d at 1322 (denying vacatur under § 10(a)(1) where petitioner failed to

establish any "newly discovered undue means or fraud").[30]

Nor has Freeman demonstrated that the alleged fraud or corruption in the

arbitration was "materially related" to the panel's resolution of the issues before it.

See Dorward, 2013 WL 5407660, at *2 (citation and internal marks omitted).  To the

contrary, the final award clearly articulates a legal basis in support of each of the

panel's findings, and nothing in the award suggests that the panel's decision was

influenced in any way by the conduct about which Freeman complains.  See

---

[30] Furthermore, "[v]acatur is precluded where [as here] the arbitrators had before them all material information relating to the alleged undue means."  Fetcho, 114 F. Supp. 2d at 1322 (citing Scott v. Prudential Sec., Inc., 141 F.3d 1007, 1015 n.16 (11th Cir. 1998), overruled in part on other grounds by, Mattel, Inc., 552 U.S. at 586) (confirming award where the panel "had the opportunity to consider all of [petitioner's] objections and apparently did so").

generally [Doc. 3-9]; see also Washington, 2014 WL 4401291, at *11, 13 (confirming arbitration award against plaintiff where, even assuming defendants' counsel engaged in deception during arbitration proceedings, the arbitrator did not rely on the alleged misconduct in his stated bases for the award, and the award was therefore not procured by fraud or corruption); Mays v. Lanier Worldwide, Inc., 115 F. Supp. 2d 1330, 1349 (M.D. Ala. 2000) (denying petition for vacatur under § 10(a)(1) where petitioner failed to demonstrate that the alleged fraud affected the arbitrator's decision); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lambros, 1 F. Supp. 2d 1337, 1345 (M.D. Fla. 1998), aff'd, 214 F.3d 1354 (11th Cir. 2000)) (fraudulent conduct during arbitration proceedings was not grounds to vacate the award where it was "difficult to see how the alleged [fraud] affected the outcome of the [arbitration] proceedings"). Accordingly, vacatur is not justified under the first statutory basis enumerated in § 10 of the FAA.

### 2.    *9 U.S.C. § 10(a)(2)*

As noted earlier, § 10(a)(2) of the FAA permits a court to vacate an arbitration award "where there was evident partiality or corruption in the arbitrators[.]"  9 U.S.C. § 10(a)(2).  Freeman contends that the panel in this case displayed corruption and partiality by denying her February 26, 2014, motion to stay proceedings; failing to hold the telephonic hearing requested by Freeman pursuant to JAMS Streamlined

Rule 13(c); engaging in prohibited *ex parte* communication with defendants; and allegedly accepting materials referencing the prior arbitration at the final hearing, in contravention of its own pretrial order which struck those materials from the record. See [Doc. 25 at 5-7]. Citi defendants argue that Freeman has failed to make the necessary showing to permit vacatur under § 10(a)(2). See [Doc. 16 at 16-19].

An arbitration award may be vacated under § 10(a)(2) "'only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists.'" Dorward, 2013 WL 5407660, at *3 (citation omitted) (quoting World Bus. Paradise, Inc. v. Suntrust Bank, 403 F. App'x 468, 470 (11th Cir. 2010) (per curiam) (unpublished)). Thus, "there must be a substantial relationship between the arbitrator and a party in order to establish 'evident partiality' under the statute," U.S. ex rel. Postel Indus., Inc., 2014 WL 3594306, at *3 (citation and internal marks omitted)), and "'[t]he mere appearance of bias or partiality is not enough to set aside an arbitration award,'" Bock, 2013 WL 210253, at *5 (footnote omitted) (quoting Lifecare Int'l, Inc., 68 F.3d at 433). Moreover, "'[t]he evident partiality exception is to be strictly construed,' and the 'alleged partiality must be direct, definite and capable of demonstration rather than remote, uncertain and speculative.'" U.S. ex rel. Postel Indus., Inc., 2014 WL 3594306, at *2 (quoting ADM Investor Servs. Inc.,

146 F.3d at 1311).  The "'burden of proving facts which would establish a reasonable impression of partiality rests squarely on the party challenging the award.'" Smolchek, 2012 WL 4056092, at *2 (quoting Middlesex Mut. Ins. Co. v. Levine, 675 F.2d 1197, 1201 (11th Cir. 1982) (per curiam)).

Freeman's petition to vacate the award under § 10(a)(2) fails because she has not shown either the existence of an actual conflict or that any of the arbitrators on the panel knowingly failed to disclose any information suggesting a potential conflict.  See Dorward, 2013 WL 5407660, at *3 (summarily denying vacatur under § 10(a)(2) where petitioner failed to establish the existence of an "actual conflict [] or that the Arbitrator displayed evident partiality").  Nor has she presented any evidence of a "substantial relationship" between defendants and any of the panel's members, as the statute requires.  See U.S. ex rel. Postel Indus., Inc., 2014 WL 3594306, at *3 (citation omitted).  Freeman asserts that the *ex parte* e-mail exchange between the panel and defendants was a "serious violation" that compromised her trust in the panel's integrity, see [Doc. 25 at 7 (citations omitted)]; see also [Doc. 3 at 12 ¶ 74], but it is well-established that *ex parte* contacts alone, absent a showing of prejudice, do not suffice to demonstrate an arbitrator's evident partiality or corruption under § 10(a)(2), see Pac. Breakwater W., Inc., 2000 WL 276812, at *5 (citing Mut. Fire, Marine & Inland Ins. Co. v. Norad Reins. Co., 868 F.2d 52, 57 (3d

42

Cir. 1989)) ("A mere showing of *ex parte* contact without demonstrating how the conduct prejudiced the other party is insufficient to support overturning the arbitrator's award."); see also Dorward, 2013 WL 5407660, at *2 (confirming arbitration award notwithstanding petitioner's claims that "the Arbitrator and defendant's counsel improperly communicated before and after the arbitration hearing, during breaks, and during the hearing through eye contact").  Indeed, Arbitrator Robertson's February 21 e-mail to counsel for Citi defendants, which is the sole instance in this case of any *ex parte* contact from a panel member to one of the parties, consisted of nothing more than a simple request for the discovery requests and responses that the parties had already served on one another, see [Doc. 15-2; Doc. 15-3; Doc. 15-10 at 7, 10-17; Doc. 16 at 6], and notwithstanding Freeman's conclusory assertion to the contrary, [Doc. 3 at 13-14 ¶ 80 (alleging that the panel's *ex parte* contact "forever prejudiced [her] right to a fair arbitration")], the e-mail exchange makes no mention of any contested issues between the parties and there is simply no indication that the exchange affected the outcome of the arbitration in any way, see [Doc. 15-10 at 7; Doc. 16 at 18 (citation omitted) (Citi defendants arguing that the *ex parte* communication "could not possibly" have resulted in prejudice because it was merely "procedural in nature and did not contain any substantive discussion of the parties' claims")]; Global Gold Min. LLC v. Caldera

43

Res., Inc., 941 F. Supp. 2d 374, 386-87 (S.D.N.Y. 2013) (internal marks omitted) (confirming arbitration award notwithstanding arbitrator's *ex parte* communications with one of the parties, where the communications had "nothing to do with the heart of the dispute's merits" and did not "substantially affect[]" the outcome of the arbitration).[31]   Instead, the most that Freeman's allegations of *ex parte* contact establish is the "mere appearance" of bias, which is insufficient to warrant vacatur under § 10(a)(2) as a matter of law.   See Bock, 2013 WL 210253, at *5 (footnote, citation, and internal marks omitted); Cont'l Cas. Co. v. Staffing Concepts, Inc., No. 8:09-CV-02036-T-23AEP, 2011 WL 7459781, at *5-6 (M.D. Fla. Dec. 20, 2011), adopted by 2012 WL 715652, at *2 (M.D. Fla. Mar. 5, 2012) (citations omitted) (denying petition to vacate arbitration award despite "evidence of multiple *ex parte* communications" between arbitrator and counsel for opposing party, since the

---

[31] See also Kennecott Utah Copper Corp. v. Becker, 186 F.3d 1261, 1271 (10th Cir. 1999) (quoting Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985, 995 (3d Cir. 1997)) (noting "rule developed under [FAA] that court 'has the power to vacate an arbitration award where an arbitrator receives *ex parte* information to the prejudice of one of the parties'"); Pac. Breakwater W., Inc., 2000 WL 276812, at *5 (citing M & A Elec. Power Coop. v. Local Union No. 702, Int'l Bhd. of Elec. Workers, 977 F.2d 1235, 1237-38 (8th Cir. 1992)) (requiring party seeking vacatur based on arbitrator's *ex parte* communication to demonstrate that the communication "deprived [that party] of a fair hearing" and "influenced the outcome of the arbitration"); Al-Harbi v. Citibank, N.A., Civ. A. No. 94-2425(NHJ), 1995 WL 450523, at *3 (D.D.C. July 17, 1995), aff'd, 85 F.3d 680 (D.C. Cir. 1996)) (denying petition to vacate award based on *ex parte* communication where petitioner failed to "demonstrate[] that the arbitrator improperly relied on *ex parte* evidence, much less that such information prejudiced the result").

"communications at best show[ed] only the 'mere appearance' of bias or partiality as opposed to direct evidence of bias").[32]

Freeman next argues that the panel was corrupt because it ruled on the parties' discovery dispute without first holding the telephonic hearing requested by Freeman, in purported "violation" of JAMS Streamlined Rule 13(c). See [Doc. 25 at 6-7 (citations omitted)].[33] However, Freeman already raised this objection during the arbitration, and JAMS expressly determined that the panel had discretion under Rule 13(c) to resolve the discovery dispute without the requested hearing. See [Doc.

---

[32] The Court also notes that the only panel member to initiate *ex parte* contact in this case was Arbitrator Robertson, see [Doc. 15-10 at 7], and only a majority vote of three-member panel was required to make the final award, see [Doc. 3-1 at 6 (appeal clause of arbitration agreement, stating that "[t]he panel . . . make[s] decisions based on the vote of the majority")]. Consequently, even if the February 21 communication could be construed as evidence of bias on the part of Arbitrator Robertson, that bias had no effect on the outcome of the proceedings since the panel's award in this case was unanimous. See [Doc. 3-9 at 9]; see also Cont'l Cas. Co., 2011 WL 7459781, at *5-6 (denying petition to vacate award based on evident partiality where, even if one of the arbitrators on the panel was biased, no prejudice resulted because the award was unanimous and there was no evidence of bias in any of the other arbitrators on the panel).

[33] In a similar vein, Freeman asserts that the award should be overturned because the panel denied her February 26 motion to stay, [Doc. 25 at 5], but this argument amounts to nothing more than a complaint about the panel's adverse ruling, which in no way demonstrates evident partiality or corruption under § 10(a)(2), see, e.g., British Ins. Co. of Cayman v. Water St. Ins. Co., 93 F. Supp. 2d 506, 520 (S.D.N.Y. 2000) (brackets omitted) (citations and internal marks omitted) (noting that "speculation of evident partiality based on adverse rulings is clearly insufficient to warrant vacatur of the arbitration panel's award").

45

15-16 at 2].  Moreover, although it did not hold a hearing, the panel made its

discovery ruling—partially in Freeman's favor, no less—only after taking into

consideration Freeman's discovery requests and Citi defendants responses and

objections.  See [Doc. 15 at 12 ¶ 69, 14 ¶ 77; Doc. 15-7; Doc. 15-10 at 4-5, 7; Doc. 16 at

6-7].  In any event, the Court is not permitted to vacate the award based on the

panel's alleged violation of its own procedural rules.  See Pochat, 2013 WL 4496548,

at *11 (citations omitted) (citing Butterworth, 2012 WL 4732886, at *14) ("[V]iolations

of [an arbitral panel's] procedural rules are not a valid basis for vacating an

award."); Ruggiero, 2011 WL 2910066, at *3 (first alteration in original) (footnote and

citation omitted) (quoting Ala. Educ. Ass'n v. Ala. Prof'l Staff Org., 655 F.2d 607, 608

(5th Cir. 1981)) (noting that "'[p]rocedural questions should be left to the

arbitrator"); Cartwright v. Roxbury Capital Mgmt., LLC, No. 5:06-cv-283-Oc-10GRJ,

2007 WL 1303033, at *4 (M.D. Fla. May 3, 2007) (footnote, citation, and internal

marks omitted) (denying petition to vacate arbitration award based on panel's

alleged violation of its own procedural rules, since "[p]etitioners must point to a

statutory violation to warrant vacatur of an arbitral award, not a violation of the

code of arbitration procedure").[34]

---

[34] Freeman also argues that the panel exhibited bias by allegedly proceeding with the hearing before Citi defendants had paid the entire balance of arbitration fees owed to JAMS, in spite of a purported JAMS "Hearing Notice" which advised the parties that "[a]ll fees must be paid to proceed with the hearing."  [Doc. 25 at 6

Finally, Freeman contends that the panel manifested its partiality by accepting Citi defendants' alleged submission of their Answer as evidence at the hearing, in "violation . . . of [the panel's] own [pretrial] Order," which struck from the record any portions of the Answer that referenced the prior award.  See [Doc. 3 at 18 ¶ 95]; see also [Doc. 25 at 6].  Citi defendants represent, however, that their Answer was not offered as evidence at the hearing, see [Doc. 15 at 18 ¶ 95], and Freeman, who did not attend the hearing, has failed to present any evidence rebutting this representation.  In addition, as previously stated, the copy of the prior award that Citi defendants' had initially submitted with their pleadings and which was also

---

(citation and internal marks omitted)].  In particular, Freeman points to Citi defendants' post-hearing submission to the panel, see [Doc. 25 at 6], in which Citi defendants represented, in the section of their brief seeking to recover costs and expenses, that they had already incurred more than $30,000.00 in JAMS arbitration costs in connection with Freeman's appeal, including a recently invoiced charge of about $6,000.00 which Citi defendants said would "be paid in the normal course of business," see [Doc. 15-23 at 5 & n.3]; see also [Doc. 3-9 at 8 (final award noting that Citi defendants had incurred costs in the appellate proceedings of $30,602.43, "paid or to be paid to JAMS")].  There is no evidence, however, that Citi defendants failed to pay any required JAMS fees, nor has Freeman identified any JAMS regulations that would prohibit the panel from holding a hearing until each party had paid its fees in full.  To the contrary, the JAMS rules pertaining to the effect of non-payment of fees on the continuation of arbitration appear to be entirely discretionary.  See [Doc. 3-5 at 15, Rule 26(b) (emphasis added) (noting that an arbitrator "*may* preclude a [p]arty that has failed to deposit its . . . share of the fees and expenses [prior to the hearing] from offering evidence . . . at the hearing.")]; see also [Doc. 3-5 at 8, Rule 6(c) (emphasis added) ("If, at any time, any [p]arty has failed to pay fees or expenses in full, JAMS *may* order the suspension or termination of the proceedings."), 15, Rule 26(a) (emphasis added) ("The non-payment of fees *may* result in an administrative suspension of the case[.]")].

stricken from the record in the panel's February 12 Order was not included among the exhibits at the hearing.  <u>See</u> [Doc. 15-1 at 2; Doc. 15-21 at 4; Doc. 16 at 9].  Nor has Freeman otherwise identified any facts indicating that the final award was influenced by the first award—a suggestion which the panel conclusively dispelled in its decision by unequivocally stating that none of its members had even read the previous award.  <u>See</u> [Doc. 15-1 at 2].  "Under these circumstances, the Court will defer to the panel's interpretation of its own evidentiary rulings and directions to the parties," <u>Smolchek</u>, 2012 WL 4056092, at *5, and the Court thus rejects Freeman's argument that the panel's purported violation of its own Order is grounds to vacate the award, <u>see</u> <u>Dorward</u>, 2013 WL 5407660, at *2 (footnote omitted) (rejecting petitioner's conclusory allegation that arbitrator violated its own Order); <u>Pochat</u>, 2013 WL 4496548, at *7-12 (denying petition to vacate award where petitioner claimed that arbitration panel's award was "contradictory to the [p]anel's own findings").  For these reasons, Freeman has failed to carry her "burden of proving facts" establishing corruption or evident partiality, and her petition to vacate the award under § 10(a)(2) is therefore due to be denied.  <u>See</u> <u>Smolchek</u>, 2012 WL 4056092, at *2 (citation and internal marks omitted).

**3.**     *9 U.S.C. § 10(a)(3)*

Freeman asserts that vacatur is appropriate under § 10(a)(3) because the panel was guilty of misconduct in refusing to postpone the hearing and to hear evidence material to the controversy, and by engaging in other acts of misbehavior that resulted in prejudice to Freeman's rights.  See [Doc. 25 at 8-9].  "Arbitrators 'enjoy wide latitude in conducting an arbitration hearing,' and they 'are not constrained by formal rules of procedure or evidence.'"  Pochat, 2013 WL 4496548, at *10 (citation omitted).  Indeed, "[t]o effectuate its purpose of speedy resolution of disputes, the [FAA] allows arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues."  Booth, 902 F.2d at 932 (citing O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc., 857 F.2d 742, 747-48 (11th Cir. 1988)); see also Pochat, 2013 WL 4496548, at *10 (citation omitted) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991)) (explaining that, while arbitration "procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration'").  Accordingly, "courts have emphasized that [§ 10(a)(3)] does not warrant vacatur where an arbitrator merely made an erroneous discovery or evidentiary ruling; rather, a plaintiff must show that the arbitrator's handling of these matters was in bad faith or so gross as to

amount to affirmative misconduct, effectively depriving the plaintiff of a fundamentally fair proceeding." Pochat, 2013 WL 4496548, at *10 (citations omitted) (citing Misco, Inc., 484 U.S. at 40).   A "mere difference of opinion between the arbitrators and the moving party as to the correct resolution of a procedural problem will not support vacatur under section 10(a)(3)," Scott, 141 F.3d at 1016 (citation omitted), nor does "[t]his statutory basis for vacatur . . . invite hindsight evaluations of the correctness of the judgment of an arbitration panel in managing the presentation of evidence during an arbitration," Duke, 941 F. Supp. at 1211). "Furthermore, even a showing of arbitrator 'misbehavior,' without more, does not justify vacatur, because § 10(a)(3) also includes a prejudice element that the petitioning party must satisfy." Pochat, 2013 WL 4496548, at *10 (citing 9 U.S.C. § 10(a)(3)).

Freeman first asserts that the panel engaged in misconduct by denying her February, 2014, motions to stay proceedings and to postpone the final hearing. See [Doc. 25 at 8]. "Under the FAA, a district court may vacate an arbitration award if the arbitrator refused to postpone a hearing upon [a] showing of sufficient cause." Ruggiero, 2011 WL 2910066, at *2 (citation omitted) (citing 9 U.S.C. 10(a)(3)). However, "[a]s the Eleventh Circuit instructs, so long as there was 'any reasonable basis' for failing to postpone the final hearing . . ., the panel's award must remain

undisturbed." Bock, 2013 WL 210253, at *4 (quoting Scott, 141 F.3d at 1016). "'Any reasonable basis' is a broad standard." Pochat, 2013 WL 4496548, at *16. For instance, "the policy of expeditious dispute resolution can serve as a reasonable basis for denying postponement," Ruggiero, 2011 WL 2910066, at *2 (citations omitted) (citing El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co., 247 F.3d 843, 848 (8th Cir. 2001)), and "concern for further delay of [arbitration] proceedings" is therefore "one of 'several good and sufficient reasons to support [an arbitration] panel's action' in refusing to postpone [a] hearing," Pochat, 2013 WL 4496548, at *16 (quoting Schmidt, 942 F.2d at 1573); see also id. (citations omitted) (noting that "'an arbitration panel's possible reliance on any one of a number of factors, including the desire for an expeditious resolution of the dispute, justifie[s] its refusal to postpone a hearing'").

As previously mentioned, the arbitration proceedings in this case lasted almost a year and a half, yet, as the panel noted in its award, Freeman nonetheless "made repeated efforts to postpone or continue [the final hearing]," [Doc. 3-9 at 5], which included filing an eleventh-hour motion to stay proceedings altogether, [Doc. 15-14], just a week before the hearing was to occur. Since the panel did not explain why it denied Freeman's motions to postpone the hearing and stay proceedings, the Court's inquiry is necessarily "limited to whether 'there was any reasonable basis

for [the panel's] decision.'"  See Dorward, 2013 WL 5407660, at *3 (alteration in original) (quoting Rosensweig v. Morgan Stanley & Co., 494 F.3d 1328, 1333 (11th Cir. 2007)).  And given the circumstances of this case, the Court finds that "it would have been perfectly 'reasonable' for the [p]anel to have determined that the [a]rbitration proceedings, which had lasted for [nearly a year and a half], 'had already been protracted so long as to violate the policy of expeditious handling of such disputes.'"   See Pochat, 2013 WL 4496548, at *16 (citation omitted).[35] Accordingly, the arbitration panel "acted well within [its] procedural discretion in denying [Freeman's] request[s] for postponement," see Ruggiero, 2011 WL 2910066, at *3, and Freeman's attempt to vacate the award based on her opinion to the contrary is entirely without merit.

Freeman also argues that the panel refused to hear relevant evidence by denying certain of Freeman's requests for additional discovery in the appellate proceedings.  See [Doc. 25 at 8-9.  Specifically, Freeman argues that the panel's failure to grant all of the discovery she requested was in "violation of [the panel's] own [pretrial] Order stating that [Freeman] could ask for anything not previously

---

[35] Considering the length of the proceedings in this case, Freeman's argument that the panel was guilty of misbehavior by "rapidly rush[ing]" the proceedings, which allegedly adversely "influenced the arbitration . . . [and] caused [Freeman] harm," see [Doc. 25 at 8-9 (citations omitted)], likewise fails to provide a viable basis for vacatur under § 10(a)(3).

received[.]"  See [Doc. 25 at 8-9 (citation omitted)]; see also [Doc. 3 at 11-12 ¶ 69].[36]

"'[D]iscovery is not guaranteed in arbitration,'" see Scurtu, 2012 WL 4061759, at *5

(quoting Rintin Corp., S.A. v. Domar, Ltd., 374 F. Supp. 2d 1165, 1170 (S.D. Fla.

2005)), however, nor is an arbitration panel "'bound to hear all the evidence

tendered by the parties,'" Pochat, 2013 WL 4496548, at *17 (quoting Robbins, 954

F.2d at 685).  Indeed, "'arbitrators have broad discretion . . . to grant or deny the

ability to obtain discovery,'" Scurtu, 2012 WL 4061759, at *5 (alteration in original)

(quoting Rintin Corp., S.A., 374 F. Supp. 2d at 1170), and therefore "courts should

not review the legal adequacy of [arbitators'] evidentiary rulings,'" Pochat, 2013 WL

4496548, at *10 (quoting Amalgamated Meat Cutters & Butcher Workmen of N. Am.,

Dist. Local No. 540 v. Neuhoff Bros. Packers, Inc., 481 F.2d 817, 820 (5th Cir. 1973)).

Additionally, "the Eleventh Circuit has held that 'an arbitration award must not be

set aside for [an arbitrator's] refusal to hear evidence that is cumulative or

irrelevant,'" Pochat, 2013 WL 4496548, at *17 (quoting Robbins, 954 F.2d at 685),

since it is "[o]bviously . . . the role of the [a]rbitrator, as it is the role of any judicial

or quasi-judicial figure, to limit discovery to those subjects that will lead to relevant

information," Scurtu, 2012 WL 4061759, at *5 (citation and internal marks omitted).

---

[36] Freeman further asserts that the panel refused to hear relevant evidence by engaging in *ex parte* communications and failing to conduct a discovery dispute conference, see [Doc. 25 at 8], but Freeman does not explain how either of these actions by the panel resulted in the refusal to consider evidence under § 10(a)(3).

The record in this case does not support a finding that the panel engaged in any affirmative misconduct by granting Freeman only a portion of the discovery she requested in her appeal.   Freeman received extensive discovery in the first arbitration, see [Doc. 15-3 at 2; Doc. 15-10 at 14; Doc. 16 at 4], as well as additional discovery at the outset of the appeal, see [Doc. 15 at 10 ¶ 59; Doc. 15-2; Doc. 15-3; Doc. 15-4 at 2; Doc. 15-10 at 14-17; Doc. 16 at 6].   When the parties came to an impasse over certain of Freeman's discovery requests, the panel promptly resolved the dispute by denying certain of Freeman's requests, but granting others, see [Doc. 15 at 12 ¶ 69; Doc. 15-7; Doc. 16 at 7], and Citi defendants complied with the panel's directive to produce the additional discovery requested, see [Doc. 15 at 12 ¶ 69; Doc. 15-8].   It is thus plain from the record that Freeman was afforded the opportunity to engage in extensive discovery throughout the arbitration proceedings—an opportunity of which she also took full advantage—and her contention that the final award must be vacated simply because the panel failed to rule in her favor on each and every one of her discovery requests in the appeal amounts to nothing but a "mere difference of opinion" as to the proper resolution of the parties' discovery dispute, which does not support vacatur under § 10(a)(3).  See Scott, 141 F.3d at 1016 (citation omitted).  Indeed, "[g]iven the length of the [a]rbitration proceedings and the volume of evidence and filings in connection with it, the [p]anel reasonably

could have concluded that no additional evidence[, beyond what Freeman had already received in the first arbitration and the appeal,] was warranted." See Pochat, 2013 WL 4496548, at *17 (citation omitted).

The panel was required under the FAA to conduct only a "restricted inquiry into factual issues," see Booth, 902 F.2d at 932 (citation omitted), and there is simply no evidence in this case that any of the panel's discovery rulings were undertaken in bad faith or otherwise constituted such egregious misconduct as to deprive Freeman of a "fundamentally fair proceeding," see Pochat, 2013 WL 4496548, at *10 (citations omitted); see also id. (alteration in original) (citation and internal marks omitted) (quoting Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1443 (11th Cir. 1998)) ("As the Eleventh Circuit has explained, arbitration proceedings need not follow all the 'niceties' of the federal courts; [they] need provide only a fundamentally fair hearing."). Moreover, Freeman already presented her objections to the panel's discovery rulings during the arbitration proceedings, see [Doc. 15-9 at 3-4 (objecting to the panel's February 21 Order partially denying her discovery requests)], and the Court "rejects [Freeman's] invitation to engage in [an] act of judicial second-guessing [by] re-litigat[ing] discovery decisions that were properly before the arbitration panel," see Bock, 2013 WL 210253, at *1. Nor has Freeman demonstrated that any of the panel's challenged discovery rulings resulted

in prejudice to her rights, as § 10(a)(3) requires.  See Pochat, 2013 WL 4496548, at *7, 11 (citation omitted) (finding that even if arbitration panel's "discovery-rule violations could be considered a form of arbitrator 'misbehavior,'" vacatur was still improper because petitioner did not "show that his rights were prejudiced . . . as required to justify vacatur under [§] 10(a)(3)); Smolchek, 2012 WL 4056092, at *5 ("For each challenged decision, the Court finds that the panel had at least some reasonable basis for the actions it took, and . . . [plaintiff] has not demonstrated that it was unfairly prejudiced to the point of being denied a fundamentally fair hearing."); Duke, 941 F. Supp. at 1212 (denying petition to vacate where petitioners "failed to direct the Court['s] attention to any specific evidence they were prevented from presenting and [] failed to demonstrate any prejudice arising from such a lack of evidence").  In sum, "the arbitrat[ion panel] ha[d] extremely broad discretion in governing the scope of discovery, and [Freeman] ha[s] made no showing that the [panel] exceeded or abused that discretion."  See Scurtu, 2012 WL 4061759, at *5. Accordingly, § 10(a)(3) of the FAA does not provide a basis for vacating the award.

### 4.     9 U.S.C. § 10(a)(4)

The fourth and final statutory basis for vacatur "empowers a court to vacate an arbitration award if the arbitrators 'exceeded their powers,' but the provision applies narrowly and only if the arbitrators decide an issue not submitted by the

parties or grant relief not authorized in the arbitration agreement.'" Dorward, 2013 WL 5407660, at *2 (citation omitted) (citing Morgan Stanley & Co., LLC v. Core Fund, 884 F. Supp. 2d 1229, 1231 (M.D. Fla. 2012)).  "In determining whether the panel abused its power, such that the award should be vacated, the scope of the Court's analysis is exceedingly narrow," Bock, 2013 WL 210253, at *4 (citations omitted), and "'it is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable,'" Nunes, 2013 WL 1340385, at *1 (citation omitted) (citing Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671-72 (2010)).  Thus, "[i]t is not enough for [Freeman] to show that the panel committed an error—or even a serious error," id. (citation and internal marks omitted), as an arbitrator's "illogical," "inappropriate," "improvident," and even "'silly' conclusions and interpretations" do not constitute abuse of authority warranting vacatur under § 10(a)(4), see Great Am. Ins. Co. v. Moye, 733 F. Supp. 2d 1298, 1303, 1306-07 (M.D. Fla. 2010) (citation omitted).

Freeman argues that the panel "exceeded [its] powers by proceeding with the arbitration after [] fail[ing] to conduct the [a]ppeal" according to the terms of the arbitration agreement, which Freeman contends "prejudiced [her] contractual right to a [n]ew arbitration."  [Doc. 3 at 9 ¶ 47]; see also [Doc. 25 at 9-10].  In support of her

argument that the panel abused its authority, Freeman lumps together a series of objections to the panel's conduct which she previously relied on in support of vacatur under the first three statutory bases of § 10. See [Doc. 3 at 14 ¶ 81; Doc. 25 at 9-10 (citation omitted) (arguing that the panel exceeded it powers by ruling against her on a number of motions and objections, and by allegedly "violat[ing] [] [its] own Orders" and the JAMS regulations and engaging in *ex parte* communication with defendants)].[37]   The Court has already determined that these instances of purported misconduct by the panel are not grounds to vacate the award, and there is no need to consider them once more under the "exceedingly narrow" standard of § 10(a)(4).  Nor does Freeman allege that the panel in this case "decided an issue not submitted by the parties or granted relief not authorized in the arbitration agreement." See Dorward, 2013 WL 5407660, at *3.  Freeman has thus failed to carry her "heavy" burden of "[p]ersuading the [C]ourt that there is enough evidence of excessive power to overcome the well-settled presumption that arbitration awards will be confirmed," see Butterworth, 2012 WL 4732886, at *4 (footnote and citation omitted), and her petition to vacate the award under § 10(a)(4) is due to be denied.

---

[37] Freeman also appears to argue that the JAMS Office of General Counsel had no authority to rule on her request to disqualify the panel, and that the panel was therefore required to disqualify itself upon Freeman's challenge to its continued service.  See [Doc. 3 at 18 ¶ 90; Doc. 25 at 10].  This argument has no basis in law or fact and warrants no further consideration.

### 5.   *Freeman's Separate Arguments Opposing Confirmation*

In addition to arguing that the award should be vacated, Freeman also raises

several arguments separately addressing the viability of Citi defendants' cross-

petition to confirm the award. <u>See generally</u> [Doc. 22]. First, Freeman contends that

confirmation of the arbitration award is not proper because Citi defendants have

failed to comply with the requirements of 9 U.S.C. § 13. <u>See</u> [Doc. 22 at 2-4 ¶¶ 1-8,

7 ¶ 23]. Section 13 of the FAA lists certain documents that must be filed with the

clerk upon the filing of an "order . . . for the entry of judgment" on a motion to

confirm, modify, or vacate an arbitration award:

> The party moving for an order confirming, modifying, or correcting an
> award shall, at the time such order is filed with the clerk for the entry
> of judgment thereon, also file the following papers with the clerk:
> (a) The agreement; the selection or appointment, if any, of an additional
> arbitrator or umpire; and each written extension of the time, if any,
> within which to make the award.
> (b) The award.
> (c) Each notice, affidavit, or other paper used upon an application to
> confirm, modify, or correct the award, and a copy of each order of the
> court upon such an application.

9 U.S.C. § 13(a)-(c). Freeman contends that a party seeking confirmation "must

present" to the Court the documents described in § 13, [Doc. 22 at 2 ¶ 2], and

that Citi defendants have failed to "produce the parties['] governing Agreement[38]

---

[38] Although Citi defendants did submit a copy of a "Card Agreement" which
includes an arbitration clause, <u>see</u> [Doc. 15-25], Freeman asserts that the version of
the agreement submitted by Citi defendants is not "the correct Agreement," [Doc.

and the selection or appointment of arbitrators" as required by § 13(a), [id. at 7 ¶ 23 (footnote added)].[39]  The documents identified in § 13, however, are required to be

_____

22 at 2 ¶ 4 (citation omitted)]; see also [id. at 10 ¶ 3 (Freeman averring that the copy of the agreement filed by Citi defendants is "not the parties' governing [c]ontract")]. Along the same lines, Freeman objects to the declaration of Ballard Spahr attorney Sarah Reise ("Reise"), [Doc. 22 at 6 ¶ 17 (citation omitted)], in which Reise states that the agreement filed by Citi defendants is the agreement "relied upon . . . as governing [Freeman's] credit card account," [Doc. 15 at 30 ¶ 3].  Citi defendants have not directly responded to Freeman's allegations that the version of the agreement which they attached to their Answer is not the "correct" or governing agreement between the parties.  See generally [Doc. 27].  Furthermore, the copy of the agreement submitted by Citi defendants is largely illegible, see generally [Doc. 15-25], nor do defendants dispute that the arbitration provisions found in the copy of the agreement submitted by Freeman accurately reflect the terms of the parties' agreement to arbitrate, see [Doc. 27 at 4 (citing [Doc. 3-1 at -7; Doc. 15-25 at 8-9]) (Citi defendants stating that the copies of the card agreement filed by Freeman and Citi defendants both "contain the same arbitration provision[s]")].  Accordingly, without deciding which card agreement is the "correct" one, the Court considers only the copy of the agreement submitted by Freeman for purposes of resolving the pending motions.

[39] Freeman also appears to assert that, by allegedly failing to provide the documents required by § 13 of the FAA, Citi defendants "'failed to meet their burden of proving the existence of [] a valid and enforceable agreement [to arbitrate.]'"  [Doc. 22 at 2-3 ¶ 6 (second alteration in original) (citation omitted)].  Nowhere in any her of her filings, however, does Freeman actually dispute the existence or validity of the arbitration agreement underlying this action.  On the contrary, it was Freeman who compelled arbitration pursuant to the parties' agreement in the first instance, see [Doc. 3 at 3 ¶ 10; Doc. 3-6 at 8; Doc. 15 at 30 ¶ 3], and Freeman's motion to compel arbitration, [Doc. 26], was expressly premised on her contention that the arbitration agreement which she attached to her complaint in this action "is valid and enforceable under the FAA and applicable state law," [id. at 2-3]; see also [id. at 7 (requesting the Court to "grant [her Motion to Compel] in accordance with the [] terms of the valid and enforceable [] Arbitration Agreement")].  Moreover, the arguments made by Freeman in support of her petition to vacate the arbitration award presuppose the validity of the underlying

filed with the clerk only when the court enters an "order . . . for the entry of judgment," and nothing in § 13 requires a party to file any particular documents merely in order to seek confirmation of an arbitration award.  Instead, § 9 provides simply that "at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.  Thus, only upon the filing of an order for entry of judgment on Citi defendants' cross-petition to confirm the award, must Citi defendants file the documents specified in 9 U.S.C.

---

agreement to arbitrate, see, e.g., [Doc. 3 at 20-21 (seeking vacatur on grounds that the arbitration panel "failed to adhere to the [arbitration] [c]ontract terms in performing the arbitration" and "ignor[ed] the terms of the [arbitration] [c]ontract"); Doc. 25 at 2 (arguing for vacatur "based on the [p]anel['s] . . . failure to conduct the . . . [a]rbitration per the terms of the [arbitration] [a]greement"), 9 (arguing that vacatur is required because the panel conducted the arbitration "outside the scope of the terms within the [a]greement")], and each of Freeman's state and federal claims are likewise based on her allegations that defendants failed to act in conformity with the arbitration's agreement's binding terms, see, e.g., [Doc. 3 at 23-24 ¶ 121 (arguing that Ballard Spahr violated the FDCPA by seeking relief "which [was] not authorized under the [arbitration] [c]ontract"), 25 ¶ 127, 26 ¶ 135 (asserting that Citi defendants are liable for breach of contract "by failing to arbitrate pursuant to the terms of the [arbitration] [c]ontract")].  Accordingly, notwithstanding Freeman's isolated remark about defendants' purported "fail[ure] to meet their burden of proving . . . a valid and enforceable agreement [to arbitrate],'" [Doc. 22 at 2-3 ¶ 6 (last alteration in original) (citation omitted)], it is clearly undisputed, and the Court also independently concludes, that the parties entered into a valid, enforceable arbitration agreement which gave rise to the award in this case, see [Doc. 27 at 2 ("There is simply is no dispute in this case that the parties entered in a valid arbitration agreement.")].

§ 13.  At this stage of the litigation, however, Citi defendants have properly sought to confirm the arbitration award under § 9 because they were parties to the arbitration and they moved to confirm the award in this Court within one year after the award was made.  Accordingly, the alleged failure of Citi defendants to file the documents specified in 9 U.S.C. § 13 in connection with their cross-petition to confirm the arbitration award does not prevent confirmation of the award or otherwise permit the Court to avoid § 9's mandatory confirmation requirement.[40]

Freeman further appears to argue that Citi defendants' cross-petition to confirm the arbitration award is not properly before the Court because this is an "FDCPA action," in which Freeman has asserted substantive claims in her complaint, while "'[a]ctions to confirm arbitration - awards" are supposedly "straightforward proceedings in which no other claims are to be adjudicated[.]'" See [Doc. 22 at 4-5 ¶ 9 (citation omitted)]; see also [id. (asserting that "[d]efendants improperly wedges [sic] their Cross-Petition to confirm the Award within [Freeman's] FDCPA action")].  As sole support for this argument, Freeman relies on the Second Circuit decision of Ottley v. Schwartzberg, 819 F.2d 373 (2d Cir. 1987).

---

[40] In any event, the documents which Freeman contends that Citi defendants' failed to file—the credit card agreement and the JAMS letter confirming the selection of arbitrators—were also separately filed by Freeman, see [Doc. 3 at 7 ¶ 33; Doc. 3-1; Doc. 3-7], and neither the terms of the arbitration agreement nor the identity of the arbitrators are in dispute in this case, see [Doc. 15 at 6 ¶ 33; Doc. 27 at 6 n.2].

<u>See</u> [Doc. 22 at 4-5 ¶ 9].   In that case, the plaintiff joined to its petition for confirmation of an arbitration award an additional request that the defendants be ordered to "pay damages permitted under ERISA in the event that they opposed confirmation."   <u>Ottley</u>, 819 F.2d at 376.   Observing that, "in a confirmation proceeding, the court properly may consider only the statutory bases for modifying or vacating an award," and noting that the plaintiff did not plead his ERISA claims separately from his petition to confirm the award, the court found that the plaintiff's ERISA claims were "not properly joined in the confirmation action," and therefore dismissed those claims without prejudice, while also ordering that the arbitration award be confirmed.   <u>Id.</u> at 377.   The Court in <u>Ottley</u> thus held only that the party petitioning for confirmation had not properly pled an additional claim against the opposing party, not that an opposing party's claims against the petitioner somehow preclude the request for confirmation.   As previously stated, the FAA permits "any party to the arbitration" to "apply to the court . . . for an order confirming the award "at any time within one year after the award is made," 9 U.S.C. § 9, and nothing in the FAA prohibits a party from seeking confirmation of the award simply because an opposing party happens to assert a claim against it.   Simply put, that Freeman has filed a complaint against defendants in this action does not prevent Citi defendants from seeking confirmation of the award under § 9, and Freeman's argument opposing confirmation in this regard is without merit.

63

In sum, Freeman has failed to demonstrate that vacatur is warranted under any of the narrow statutory grounds prescribed in § 10 of the FAA, and the Court is therefore "'bound by § 9 to confirm the award.'" See Scurtu, 2012 WL 4061759, at *3 (quoting Frazier, 604 F.3d at 1323-24); see also Butterworth, 2012 WL 4732886, at *14 (noting that "the court must confirm the arbitration award [] unless [a] statutory exception exempts application of the general rule requiring confirmation"). Freeman "may not seek a 'second bite at the apple' simply because [she] desire[s] a different outcome," see Duke, 941 F. Supp. at 1210 (quoting Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994)), and "the Court is of the opinion that '. . . this controversy should be put to rest once and for all,'" see Scurtu, 2012 WL 4061759, at *7 (quoting Cat Charter, 646 F.3d at 846).  Accordingly, it is hereby **RECOMMENDED** that Freeman's Petition to Vacate Arbitration Award, [Doc. 3], be **DENIED**, and that Citi defendants' Cross-Petition to Confirm Arbitration Award, [Doc. 15], be **GRANTED**.

## C.   Freeman's Motion for Extension to Respond to the Motion to Dismiss and the Motion for Judgment on the Pleadings, [Doc. 28]

The motion to dismiss and the motion for judgment on the pleadings were filed in this action on August 26, 2014, [Docs. 17 &18], and Freeman initially sought an extension of time to respond to those motions on September 15, 2014, [Doc. 21]. The following day, the Court granted Freeman the requested extension, giving her

until September 29, 2014, to respond to the pending motions.  [Doc. 24].  Instead of filing responses, however, Freeman filed her September 26 motion to compel arbitration and to stay proceedings pending arbitration, [Doc. 26], and, to date, she has not filed a response to either of defendants' pending motions.  Freeman now seeks another extension to respond to defendants' motions, arguing that she has shown excusable neglect under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure.  See [Doc. 28].  Specifically, Freeman asserts that she filed her motion to compel arbitration and to stay proceedings pending arbitration "in lieu of responding to [the motion to dismiss and motion for judgment on the pleadings]," based on her belief that "no response to [those] two motions [is] due while [the] Motion to Compel Arbitration . . . is pending[.]"  [Id. at 2]; see also [Doc. 33 at 8-9 (stating that she "filed her Motion To Compel and Stay in lieu of responding to [d]efendants' [] Motion to Dismiss and Motion For Judgment On The Pleadings")].  Freeman thus requests the Court "to first rule on [her] pending [motion to compel arbitration], and in the alternative, allow [her] 14 days to respond" to the motion to dismiss and the motion for judgment on the pleadings.  See [Doc. 28 at 2-3]; see also [id. at 2 (requesting that, "[i]f the Court should find that [the motion to dismiss and the motion for judgment on the pleadings] require a response, . . . or if [the] Motion

to Compel Arbitration is denied . . .," she be afforded an additional 14 days to provide a response)].

Defendants oppose Freeman's motion for an extension, arguing that Freeman has "fail[ed] to satisfy the requirements of Federal Rule of Civil Procedure 6 for an extension of time to respond to a motion after the [] response deadline has expired." See [Doc. 30 at 1-2].   In particular, defendants argue that Freeman has not established "excusable neglect" under Rule 6 because she admits that "she purposely filed the motion to compel 'in lieu of responding' to the motion to dismiss and the motion for judgment on the pleadings."  See [id. at 2-3 (citation omitted)]. Defendants also contend that "[f]urther delaying adjudication of [their] dispositive motions and [Citi defendants'] petition to confirm the arbitration award [] will serve only to needlessly postpone resolution of this case."  [Id. at 2].

"Federal Rule 6(b)(1)(B) requires a showing of 'excusable neglect' for an extension of a passed deadline."   Blake v. Enhanced Recovery Co., LLC, No. 3:10-CV-1178-J-37JBT, 2011 WL 3625594, at *1 (M.D. Fla. Aug. 17, 2011) (citation and internal marks omitted) (quoting Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc., 648 F. Supp. 2d 1371, 1375 (M.D. Fla. 2009)).  "Although under Rule 6(b) the court has the discretion to accept an untimely filing if excusable neglect is shown, the rule does not require the court to do so." Deforest v. Johnny Chisholm Global Events,

LLC, No. 3:08CV498/MCR/EMT, 2010 WL 1792094, at *5 (N.D. Fla. May 4, 2010), adopted by 2010 WL 2278356, at *1 (N.D. Fla. June 4, 2010) (citation omitted); see also id. (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 896 & n.5 (1990)) ("Rule 6(b) confers discretion on the district court to permit untimely filings, but does not compel the district court to accept them[.]").

The "determination of excusable neglect is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Blake, 2011 WL 3625594, at *1 (internal marks omitted) (quoting Walter v. Blue Cross & Blue Shield United of Wis., 181 F.3d 1198, 1201 (11th Cir. 1999)). In particular, "[a] court should consider four factors when determining excusable neglect: (1) the danger of prejudice to the [opposing party]; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the [movant]; and (4) whether the [movant] acted in good faith." Cordell v. Pac. Indem. Co., 335 F. App'x 956, 960 (11th Cir. 2009) (per curiam) (unpublished) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 391-92 (1993)).   "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect. . . ." Id. (second alteration in original) (internal marks omitted) (quoting Pioneer Inv. Servs. Co., 507 U.S. at 392).  Furthermore, "where a party's actions are deliberate, the party's late

filing cannot constitute 'excusable neglect.'" In re Celotex Corp., 232 B.R. 493, 495 (M.D. Fla. 1999), aff'd sub nom. Sunset Vine Tower v. Celotex Corp., 196 F.3d 1262 (11th Cir. 1999) (unpublished) (citations omitted) (citing In re Enstar Grp., Inc., 215 B.R. 235, 237 (Bankr. M.D. Ala. 1996)); see also Baker v. Ensign, No. 11-cv-2060-BAS(WVG), 2014 WL 4352167, at *5 (S.D. Cal. Aug. 29, 2014) (quoting Level 3 Commc'ns, Inc. v. Lidco Imperial Valley, Inc., No. 11cv01258 BTM (MDD), 2012 WL 4848929, at *8 (S.D. Cal. Oct. 11, 2012)) (noting that "a 'deliberate decision' is 'not excusable neglect'"). Finally, while "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys" and are therefore "liberally construed," "even *pro se* pleadings must adhere to time requirements." Cordell, 335 F. App'x at 960 (citation and internal marks omitted) (citing Garvey v. Vaughn, 993 F.2d 776, 780 (11th Cir. 1993)).

Freeman argues that an extension under Rule 6 is warranted because her delay in responding to the motion to dismiss and motion for judgment on the pleadings was the result of an "inadvertent" "misunderstanding[.]" See [Doc. 31 at 3]. Specifically, Freeman asserts that she was "mistaken" in her belief that the Court would "accept[] her [motion to compel arbitration] *in lieu of* responding" to the pending motions. See [id. at 2]. However, as noted earlier, a party's "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute

'excusable' neglect. . . ." <u>Cordell</u>, 335 F. App'x at 960 (alteration in original) (citation and internal marks omitted); <u>see also</u> <u>id.</u> (citation omitted) (finding *pro se* plaintiffs' "mistakes concerning [] various rules" did not amount to excusable neglect"). Morever, contrary to her conclusory assertion that her failure to timely respond to the pending motions was somehow "inadvertent," Freeman admits that she chose to file her motion to compel arbitration "in lieu of responding" to defendants' pending motions. <u>See</u> [Doc. 28 at 2]; <u>see also</u> [Doc. 31 at 2-3; Doc. 33 at 8-9]. Thus, although Freeman was given until September 29, 2014, to respond to the pending motions, she chose not to do so, but instead elected to file her motion to compel arbitration within the extended deadline in which her responsive briefing was due. <u>See</u> [Docs. 24 & 26]. Freeman's deliberate choice to file her motion to compel "in lieu of responding" to defendants' pending dispositive motions does not amount to "excusable neglect" within the meaning of Rule 6 of the Federal Rules of Civil Procedure, nor has Freeman otherwise identified any circumstances that would justify an additional extension of her time to respond. <u>See</u> <u>In re Gantt</u>, 153 F.3d 720 (4th Cir. 1998) (per curiam) (unpublished) (citation omitted) ("finding . . . conscious decision not to file because of perceived futility was a 'choice' not to file and, thus, not excusable neglect"); <u>Chasse v. Astrue</u>, No. 11-CV-260-SM, 2012 WL 1841626, at *2 (D.N.H. May 21, 2012) (quoting <u>Ungar v. Palestine Liberation Org .</u>, 599 F.3d 79,

85 (1st Cir. 2010)) (finding excusable neglect incompatible with a "'deliberate strategic choice'"); Sigg v. Dist. Court of Allen Cnty., Kan., 31st Judicial Dist., Civil Action No. 06–2436–KHV, 2007 WL 189387, at *2 (D. Kan. Jan. 22, 2007) (citing Ghamrawi v. Case & Assocs. Props. Inc., 116 F. App'x 206, 210 (10th Cir. 2004)) (noting that a "conscious and deliberate choice to ignore [a] deadline [is] not excusable neglect"); see also McMullen v. Charter Sch. USA, Inc., No. 09-61578-CIV, 2011 WL 56065, at *7 (S.D. Fla. Jan. 7, 2011) (absence of bad faith by party seeking extension, without more, held not sufficient to show excusable neglect under Rule 6).[41]   Accordingly, Freeman's Motion to Extend Time to Respond to Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings, [Doc. 28], is **DENIED**.

---

[41] In addition, although Freeman now asserts that her belief that the Court would accept her motion to compel "in lieu of" her responses was "mistaken," she has still not filed any proposed responses to defendants' pending motions, nor has she proposed to correct her alleged "mistake[]" by asking for leave to file her responses without further delay.  See [Doc. 28 at 2-3 (requesting an additional 14 days to respond from the time the Court rules on her motion to compel)].  The Court finds that Freeman's significant delay in responding to the pending motions, despite already having been granted one extension to do so, coupled with her continued unwillingness to remedy that delay in a timely manner, are additional factors that weigh against granting her request for another extension of the time to respond.  See Blake, 2011 WL 3625594, at *1 (citations and internal marks omitted) (noting that excusable neglect is determined by considering "all relevant circumstances," including the "length of delay and its potential impact on judicial proceedings"); Seyboth v. Gen. Motors Corp., No. 8:07CV2292T27TBM, 2008 WL 1994912, at *1-2 (M.D. Fla. May 8, 2008) (denying plaintiff's motion for extension under Rule 6(b)(1)(B) where plaintiff did "not propose to immediately remedy the delay").

**D.   Ballard Spahr's Motion to Dismiss, [Doc. 18], and Citi Defendants' Motion for Judgment on the Pleadings, [Doc. 17]**

**1.   *Legal Standard***

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).   "'A motion for judgment on the pleadings [under Rule 12(c)] is subject to the same standard as is a Rule 12(b)(6) motion to dismiss.'"   Roma Outdoor Creations, Inc. v. City of Cumming, Ga., 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008) (quoting Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994)); see also Guarino v. Wyeth LLC, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011), aff'd, 719 F.3d 1245 (11th Cir. 2013) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)).   In considering a motion to dismiss, the Court must accept Freeman's allegations as true and construe the complaint in Freeman's favor.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).[42]  "While a

---

[42] "However, the court need not 'accept as true a legal conclusion couched as a factual allegation.'"  Smith v. Delta Air Lines, Inc., 422 F. Supp. 2d 1310, 1324 (N.D. Ga. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).   "Additionally, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.  If the appended document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.'"  Id. (alteration in original) (footnote omitted) (quoting Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974)).

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Freeman's] obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (last alteration in original) (citations and internal marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," id. (citation omitted), and the complaint must contain "enough facts to state a claim to relief that is plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Thus, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. In sum, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 678-79 (citation omitted); see also id. at 679 ("[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").  Moreover, "[r]egardless of the alleged facts . . ., a court may dismiss a complaint on a dispositive issue of law." Moore v. McCalla Raymer, LLC, 916 F. Supp. 2d 1332, 1342 (N.D. Ga. 2013), adopted at 1336 (citations and internal marks omitted).

Finally, as previously mentioned, although *pro se* pleadings are governed by less stringent standards than pleadings prepared by attorneys, see Haines v. Kerner, 404 U.S. 519, 520 (1972); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), *pro se* parties are still required to comply with minimum pleading standards set forth in the Federal Rules of Civil Procedure and this District's Local Rules, Grew v. Hopper, No. 2:07-cv-550-FtM-34SPC, 2008 WL 114915, at *2 (M.D. Fla. Jan. 9, 2008); see also Beckwith v. Bellsouth Telecomms., Inc., 146 F. App'x 368, 371 (11th Cir. 2005) (per curiam) (unpublished) (citation omitted) (noting that although they are construed liberally, " *pro se* complaints also must comply with the procedural rules that govern pleadings").

**2.**      ***Ballard Spahr's Motion to Dismiss, [Doc. 18]***

Freeman asserts that defendant Ballard Spahr is liable under various provisions of the FDCPA based on its conduct in connection with the appellate

arbitration.  See [Doc. 3 at 21-25 ¶¶ 112-23].  In particular, Freeman asserts that Ballard Spahr violated 15 U.S.C. § 1692d; §1692e(2), (5), and (10); and § 1692f, by: exposing the panel to the prior award, see [Doc. 3 at 22-23 ¶¶ 118-19]; see also [id. at 5 ¶ 22, 6 ¶¶ 23-24, 6-7 ¶ 30, 19 ¶¶ 99-100]; violating JAMS regulations governing the arbitration, see [id. at 23 ¶ 120]; see also [id. at 11 ¶¶ 64-65, 12 ¶ 75]; seeking costs, expenses, and attorney's fees to which they were not entitled, see [id. at 23-24 ¶ 121]; see also [id. at 6 ¶¶ 23-24, 19 ¶ 100]; and otherwise "attempt[ing] . . . to procure" the final award through unidentified "acts of deception and corruption in the arbitration," see [id. at 24 ¶ 122].  Ballard Spahr moves to dismiss Freeman's claims against it for failure to state a plausible claim to relief under Rule 12(b)(6).

The purpose of the FDCPA is "'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"  Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1270 (11th Cir. 2011) (quoting 15 U.S.C. § 1692(e)).  Thus, "[i]n order to prevail on [her] FDCPA claim[s], [Freeman] must establish that: (1) [she][has] been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the Act; and (3) the defendant has engaged in a prohibited act or has

failed to perform a requirement imposed by the FDCPA."  <u>Buckley v. Bayrock</u>

<u>Mortg. Corp.</u>, Civil Action File No. 1:09-CV-1387-TWT, 2010 WL 476673, at *6 (N.D.

Ga. Feb. 5, 2010), adopted at *1 (last alteration in original) (citations omitted).

   With respect to the specific provisions cited by Freeman, 15 U.S.C. § 1692d

prohibits debt collectors from "engag[ing] in any conduct the natural consequence

of which is to harass, oppress, or abuse any person in connection with the collection

of a debt."   Under § 1692e, a debt collector "may not use any false, deceptive, or

misleading representation or means in connection with the collection of a[] debt,"

such as by misrepresenting the "character, amount, or legal status of [a] debt," 15

U.S.C. § 1692e(2); threatening "to take an[] action that cannot legally be taken or that

is not intended to be taken," 15 U.S.C. § 1692e(5); or using a "false representation or

deceptive means to collect . . . a[] debt or to obtain information concerning a

consumer," 15 U.S.C. § 1692e(10).  Finally, § 1692f prohibits debt collectors from

using "unfair or unconscionable means to collect or attempt to collect a[] debt."  15

U.S.C. § 1692f.

   Freeman has not alleged facts plausibly establishing the elements of any of

these provisions, nor has she otherwise pled facts sufficient to sustain an FDCPA

claim against Ballard Spahr under any viable legal theory.   Indeed, the entire

substance of Freeman's FDCPA claims consists of nothing more than a series of

conclusory allegations of wrongdoing by Ballard Spahr during the arbitration proceedings, followed by a repetitive string of citations to provisions of the FDCPA which she contends were violated, without even the slightest explanation as to how any of the misconduct alleged amounts to a "prohibited act" under any of the provisions cited.  See [Doc. 3 at 21-24 ¶¶ 112-23].  The Court has already considered Freeman's allegations concerning defendants' alleged misconduct, in detail, in its consideration of her petition to vacate the award, and there is no need to do so again here.  For purposes of ruling on the motion to dismiss, it is sufficient to note that Freeman's conclusory allegations do not raise her right to relief above a speculative level or give rise to a reasonable inference that Ballard Spahr is liable under the FDCPA for any of the misconduct alleged.  See Buckley, 2010 WL 476673, at *6 (dismissing pro se plaintiff's FDCPA claims where plaintiff made only conclusory allegations and did not "show that the defendants engaged in any conduct that violates the FDCPA").  Freeman has not shown, for instance, that any of Ballard Spahr's alleged actions during the arbitration were oppressive or abusive, or that Ballard Spahr made any "false representations" with respect to the character, amount, or legal status of her debt.  See 15 U.S.C. § 1692d, § 1692e(2).  Nor has she shown that Ballard Spahr threatened to engage in illegal conduct or take an action that it did not intend to take, or used any "deceptive" or "unconscionable" means

in an effort to collect a debt or to obtain consumer information within the meaning of the FDCPA.  See 15 U.S.C. § 1692e(5), (10); 15 U.S.C. § 1692f.

Morever, Freeman's FDCPA claims are premised exclusively on Ballard Spahr's purported misconduct in connection with the arbitration proceedings, which allegedly "tainted" the arbitration and resulted in the adverse award.  See [Doc. 3 at 22-23 ¶¶ 118-19, 24 ¶ 123 (emphasis added) (alleging that Ballard Spahr's purported FDCPA violations "tainted" the arbitration, as a result of which Freeman "has been *damaged by the [a]ward* that [] [d]efendants obtained against [her]")].  It is well established, however, that the FAA "'provides the exclusive remedy for challenging conduct that taints an arbitration award,'" Kelly v. Wolpoff & Abramson, L.L.P., 634 F. Supp. 2d 1202, 1213 (D. Colo. 2008) (quoting Nazar v. Wolpoff & Abramson, LLP, 530 F. Supp. 2d 1161, 1168 (D. Kan. 2008)); see also AIG Baker Sterling Heights, LLC, 579 F.3d at 1276, and courts have therefore held that "[s]eeking damages in federal court for alleged wrongdoing that compromised an arbitration award is an impermissible collateral attack on the award itself," Nickoloff v. Wolpoff & Abramson, L.L.P., 511 F. Supp. 2d 1043, 1044 (C.D. Cal. 2007) (citing Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 205 F.3d 906 (6th Cir. 2000)); see also Decker, 205 F.3d at 910 (citation omitted) ("[W]here a party files a complaint in federal court seeking damages for an alleged wrongdoing that compromised an

arbitration award and caused the party injury, it 'is no more, in substance, than an impermissible collateral attack on the award itself.'").  Accordingly, to the extent Freeman's FDCPA claims are based on any alleged injury arising from the award itself, those claims are also due to be dismissed as an impermissible collateral attack on the award.  See Lynch v. Maerklin of Am., Inc., No. 88 C 3725, 1989 WL 82002, at *4 (N.D. Ill. July 10, 1989) (citations omitted) ("[T]o the extent that [plaintiff] is alleging that [defendants] injured him by [engaging in misconduct] in the arbitration proceedings, his claim represents an impermissible collateral attack on the arbitrators' judgment."); see also Nickoloff, 511 F. Supp. 2d at 1044 (plaintiff's FDCPA claims dismissed as collateral attack on arbitration award where plaintiff alleged that defendants violated the FDCPA by attempting to collect a debt through arbitration).  It is therefore **RECOMMENDED** that Ballard Spahr's unopposed motion to dismiss, [Doc. 18], be **GRANTED**, and that Freeman's claims against Ballard Spahr be **DISMISSED**.

### 3.   *Citi Defendants' Motion for Judgment on the Pleadings, [Doc. 17]*

Freeman asserts state law claims for breach of contract against Citi defendants based on Citi defendants' alleged failure to arbitrate according to the terms of the arbitration agreement.  See [Doc. 3 at 25-26 ¶¶ 124-39].  Citi defendants move for judgment on the pleadings, arguing that Freeman's "breach of contract claims are

nothing more than an end-run around the [FAA]," [Doc. 17 at 1-2], by which Freeman "effectively [seeks to] nullify the [p]anel's [a]ward," [id. at 17]. As with her FDCPA claims against Ballard Spahr, Freeman's breach of contract claims against Citi defendants are predicated solely on alleged misconduct during the arbitral proceedings, which allegedly influenced the outcome of the proceedings and thus tainted the final award. See [Doc. 3 at 25-26 ¶¶ 124-39]. As the Court has already explained, however, § 10 of the FAA "'provides the exclusive remedy for challenging an award,'" AIG Baker Sterling Heights, LLC, 579 F.3d at 1276 (citation omitted), and claims "premised entirely on the [opposing party's] . . . misconduct in the [arbitration] proceeding itself" constitute an impermissible collateral attack on the award, see Prudential Sec. Inc. v. Hornsby, 865 F. Supp. 447, 451 (N.D. Ill. 1994). This is especially true in the case of Freeman's claims for breach of contract, since she specifically alleges that the only damage she sustained as a result of Citi defendants' breach is none other than the exact amount of the final award. See [Doc. 3 at 25 ¶ 131, 26 ¶ 139 (emphasis added) (asserting that "as a result of [Citi defendants'] breach of contract . . ., [Freeman] has suffered actual damages *in the amount of the [a]ward* [] obtained against [her]"), 27 ¶ 147(b)-(c) (Freeman's prayer for relief, seeking exactly $28,357.54 as actual and compensatory damages for Citi defendants' alleged breach of contract); Doc. 3-9 at 8-9]. Because Freeman's breach

of contract claims are measured precisely "in terms of the impact that the [breach] had on the arbitration award," Hornsby, 865 F. Supp. at 450, her claims have "no purpose other than to challenge the very wrongs affecting the award for which review is provided under section 10 of the [FAA]," Corey v. NYSE, 691 F.2d 1205, 1213 (6th Cir. 1982), and they are therefore an impermissible collateral attack on the award itself, see Hornsby, 865 F. Supp. at 451 (claims were collateral attack on arbitration award where the injury alleged was "define[d] . . . by the impact of [the opposing party's misconduct] on the original award").

In short, "section 10 is the only way to obtain redress for injuries suffered because of misconduct during an arbitration." Id. at 452.   Freeman has appropriately challenged the award in this case by petitioning the Court to vacate the panel's decision under § 10, but her petition is without merit.  She may not also "collaterally attack th[e] award[] in the alternative" by asserting a separate claim for breach of contract, see Byrd v. Am. Arbitration Ass'n, No. 2:12-CV-00638, 2013 WL 1282431, at *5 (S.D. Ohio Mar. 27, 2013) (citation omitted), and her attempt to "[d]ress[] up the collateral attack as a breach of contract claim has no effect on [the Court's] analysis," Bohinick v. State Farm Mut. Auto. Ins. Co., No. CIV.A. 98-CV-2278, 1999 WL 238947, at *2 (E.D. Pa. Mar. 29, 1999) (citation omitted); see also Decker, 205 F.3d at 909-10 (dismissing plaintiff's breach of contract claims based on

defendant's alleged misconduct in connection with arbitration proceedings, since the claims, even though they did "not directly challenge the arbitration award," were at bottom an impermissible collateral attack on the panel's award, for which the exclusive means of redress is a petition to vacate or modify the award under the FAA).[43]   Accordingly, it is **RECOMMENDED** that Citi defendants' unopposed motion for judgment on the pleadings, [Doc. 17], be **GRANTED**, and that Freeman's claims against Citi defendants be **DISMISSED**.

### III. CONCLUSION

For the reasons stated, defendants' Motion for Leave to File Sur-Reply to Freeman's reply brief in support of her motion to compel arbitration, [Doc. 34], and

---

[43] Since all of Freeman's federal and state claims in this case are, in substance, a collateral attack on the panel's award, her motion to compel the arbitration of those claims is effectively an attempt to challenge the final award through the arbitral process, rather than through the available mechanisms provided in the FAA. Thus, because the FAA "'provides the exclusive remedy for challenging an award,'" AIG Baker Sterling Heights, LLC, 579 F.3d at 1276 (citation omitted), Freeman's effort to arbitrate her pending claims is an impermissible attempt to seek redress for the final award outside of the statutory means of redress prescribed in the FAA, see 9 U.S.C. § 10, and her motion to compel arbitration and stay proceedings, [Doc. 26], is due to be denied for this additional reason.  See Hornsby, 865 F. Supp. at 453 (petitioner's motion to compel arbitration denied as collateral attack on previous arbitration award where petitioner effectively sought to challenge the previous award through subsequent arbitration proceedings, rather than through § 10 of the FAA); see also id. at 451 ("Because the policies behind section 10 would be eviscerated if it were only an optional way to modify an arbitration award, an attempt to modify an award by a route or mechanism other than section 10[, such as by continued arbitration,] must be enjoined.").

Citi defendants' Motion to Stay Discovery and Pretrial Deadlines, [Doc. 19], are **GRANTED**, and Freeman's Motion to Extend Time to Respond to Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings, [Doc. 28], is **DENIED**.  It is **RECOMMENDED** that Freeman's Petition to Vacate Arbitration Award, [Doc. 3], and her Motion to Compel Arbitration and Stay Proceedings Pending Arbitration, [Doc. 26], be **DENIED**; that Citi defendants' Cross-Petition to Confirm Arbitration Award, [Doc. 15], be **GRANTED**; and that defendant Ballard Spahr's Motion to Dismiss, [Doc. 18], and  Citi defendants' Motion for Judgment on the Pleadings, [Doc. 17], be **GRANTED**.

The Clerk is **DIRECTED** to terminate this reference.

**IT IS SO ORDERED AND RECOMMENDED** this 20th day of January, 2015.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

82